UNITED STATES of America,
Plaintiff-Appellee,

v.

John Clyde ABEL, Defendant-Appellant.

No. 81–1666.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1982.

Decided May 20, 1983.

As Amended June 6, 1983.

Darrell W. MacIntyre, Los Angeles, Cal., for defendant-appellant.

Yoland Barrera Gomez, Los Angeles, Cal., for plaintiff-appellee.

Before KENNEDY, TANG and FERGU-SON, Circuit Judges.

FERGUSON, Circuit Judge:

In 1981 defendant John Abel was indicted for armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d). He was convicted by a jury and sentenced to a term of twenty-five years. He appeals the conviction on three grounds: first, that the district court improperly denied his motion to suppress evidence seized at the time of his arrest; second, that the court impaired his ability to present witnesses; and third, that the court improperly allowed the introduction of inflamatory references to a secret prison organization for purposes of impeachment. Because we agree that the district court abused its discretion in allowing the inflamatory secret prison organization references, we reverse the conviction and remand to the district court for a new trial.

FACTS

On September 8, 1981 the Bellflower Savings and Loan Association in Bellflower, California was robbed by four white males. A witness gave the FBI the license number of the getaway vehicle, a white Camaro, which was found to be registered to Anna Sainz.

That same day, several members of the Los Angeles County Sheriff's Office went to Sainz's home and interviewed her there. She informed the officers that she had loaned the car to John Abel that morning. Her housemate Ronald Gremard, Abel and another man left in the Camaro. Abel and Gremard later returned the car to the house and left again in Abel's Ford pickup truck; she expected both of them to return that evening. With Sainz's permission, the officers searched the house, finding a bank bag in one of the bedrooms. Several officers then waited inside the home, while others were stationed outside.

When Gremard and Abel arrived at the house in a Ford pickup, it was dark. Gremard entered the residence and was arrested there. Abel followed more slowly, putting on a shirt while walking toward the house. He was arrested before reaching the unlighted porch. The officers then seized some clothing from the seat of the pickup. Abel was taken to the police sub-

station and searched there. The search revealed $434.50, including a bait bill from the Bellflower Savings and Loan, and eight silver dollars alleged to have been taken in the robbery.

Abel, Gremard, and Kurt Edward Ehle were indicted for the robbery. Gremard and Ehle both pled guilty, but Abel went to trial. Ehle agreed to testify for the government as part of his plea bargain, and did so. Defendant Abel was convicted and this appeal ensued.

## I. DEFENDANT'S MOTION TO SUPPRESS

■ Abel assigns as error the trial court's denial of his motion to suppress the money, including a "bait bill," seized from his person after his arrest. The trial court found that probable cause existed for Abel's arrest and that the search of his pockets was lawful as incident to that arrest. We agree.

At the time that Abel alighted from the pickup truck and began walking toward Anna Sainz's front door, the officers had already interviewed Sainz and searched the residence. Sainz had told them that Gremard and Abel had returned to her house earlier in the white Camaro already identified as the getaway vehicle. At that time Gremard had left behind a flannel shirt which the officers found in an upstairs bedroom, wrapped around a white bank bag containing $149.95 in dimes, quarters and half dollars. Abel and Gremard had then left in Abel's Ford pickup, and Sainz expected them to return that evening to take her to dinner. Under these circumstances, the officers had probable cause to believe that the two men who drove up to Sainz's residence, in a truck matching her description, at the time she expected them to come had committed a felony earlier that day. *See United States v. Bernard,* 623 F.2d 551, 558–59 (9th Cir.1980), *quoting Beck v. Ohio,*

379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The combination of poor lighting and the fact that Abel's face was obscured by the shirt he was donning may have made it impossible for the officers to visually identify him. However, they had sufficient cause to arrest him regardless.

Because Abel's arrest was valid, a search of his person was authorized. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973). The search of Abel's pockets and wallet at the station was likewise valid. *See United States v. Ziller,* 623 F.2d 562, 563 (9th Cir.1980). The court therefore did not err in denying Abel's motion to suppress the evidence found in that search.[1]

## II. EXCLUSION OF TESTIMONY

As required by Fed.Rule of Crim.Proc. 12.1(a), Abel gave written notice of his intention to offer an alibi defense, which included his intention to call his employer Vito Spillone as an alibi witness. No other alibi witnesses were listed.

At trial, Abel sought to have the company bookkeeper, Linda Taylor, testify with regard to the business telephone records of Angie's Wholesale. The district court refused to allow Taylor to testify, ruling that since she was an alibi witness, prior notice to the government was required. Fed.R. Crim.P. 12.1(a).

Because we reverse the conviction on the ground of improper impeachment, we need not decide this issue. At the new trial, the government now has notice of the witness and the issue will not arise again.

1. Abel also moved to suppress the blue plaid shirt taken from his pickup truck. The trial court allowed the shirt into evidence on alternate grounds of search incident to arrest or "plain view." Abel has not specifically attacked this ruling as it applies to the shirt.

Because we find that probable cause existed for Abel's arrest, a contemporaneous search of the passenger compartment of the truck he had recently exited is authorized by *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

## III. IMPEACHMENT BY ASSOCIATION

Kurt Ehle testified for the government that Abel had been one of the bank robbers. The defense called Robert Mills to impeach Ehle. Mills had been in prison with Ehle and Abel and had been friendly with both of them at various times. Mills testified that Ehle had told him that Abel was not in fact one of the robbers, but that he (Ehle) intended to identify him as such in order to obtain a shorter sentence for himself. The prosecution was permitted to cross-examine Mills on his alleged membership in a "secret type of prison organization" whose members would "lie to protect the [other] members." Mills denied membership in, or knowledge of, such an organization.[2]

 Abel's final allegation of error is, in essence, that the court allowed defense witness Mills to be impeached by association. We believe it to be a fundamental tenet of our criminal justice system that guilt or innocence, credibility or lack thereof, are personal, and cannot be established by evidence that a person merely belongs to a particular group, whether that group is ethnic, political, religious or social in character, and whether such membership is inherent *or a matter of choice.* It is settled law that the government may not convict an individual merely for belonging to an organization that advocates illegal activity. *Scales v. United States,* 367 U.S. 203, 219–24, 81 S.Ct. 1469, 1481–83, 6 L.Ed.2d 782 (1959); *Brandenberg v. Ohio,* 395 U.S. 444, 448, 89 S.Ct. 1827, 1830, 23 L.Ed.2d 430 (1969). Rather, *the government must show* that the individual knows of and personally accepts the tenets of the organization. Neither should the government be allowed to impeach on grounds of mere membership, since membership, without more, has no probative value. It establishes nothing about the individual's own actions, beliefs or veracity.

In this case the prosecutor was permitted to engage in the following colloquy:

Q. Mr. Mills, do you belong to any secret type of prison organization which is restrictive somewhat in its membership?

A: No, I don't.

Q: Do you belong to any secret-type organization which has as part of its creed or tenets or oath of that organization that members thereof will first of all deny they belong to that secret organization?

A: No, I don't.

Q: And do you belong to any secret organization which has as part of its creed that those members who belong to it will lie to protect the members that are in the secret organization?

A: I know of no organization like that.

The government then recalled Ehle as a rebuttal witness. Ehle testified that Mills and Abel were both members of a secret prison organization whose members would deny its existence and would "lie, cheat, steal, kill ..." to protect other members.

 A trial court does, of course, have broad discretion to admit or exclude evidence, *United States v. Larios,* 640 F.2d 938, 941 (9th Cir.1981). This discretion does not, however, extend to allowing impeachment by association. If the government had sought to impeach Mills on the ground that he belonged to a fraternal organization, and called a witness to testify that such members believe they should lie to protect other members, the court would not have admitted such testimony; similarly it should not have admitted the evidence here. Ehle's testimony was not simply a matter of showing that Abel's and Mills' membership in the same organization might "cause [Mills], consciously or otherwise, to color his testimony." *See* dissent at 1017. Rather it was to show as well that because Mills and Abel were members of a gang whose members "will lie to protect the members," Mills must be lying on the stand. It is this

---

2. Out of the hearing of the jury, the prosecutor stated his intention to cross-examine Mills on his membership in the "Aryan Brotherhood." Recognizing the possible prejudice associated with the name of the group, the court ruled that no specific references would be permitted, but suggested that the prosecutor refer to it as a "secret prison organization."

suggestion of perjury, based purely on a group tenet, without any showing that Mills personally accepted such a tenet, that makes such testimony unacceptable. By allowing Mills' testimony to be impeached purely on the ground that he belonged to an organization that allegedly advocates perjury, with no evidence that Mills *himself* had ever expressed a willingness to lie, the court committed error.

In this case the error was reversible because Ehle's testimony implicated the defendant also as a member of the alleged organization. Since the defendant had not testified in his own behalf, this testimony was clearly not offered for impeachment purposes and served only to prejudice the defendant, again by mere association. This was reversible error.

Accordingly, we REVERSE and REMAND to the district court for a new trial.

KENNEDY, Circuit Judge, dissenting:

This case announces a rule that is incorrect and most unfortunate. It reverses a conviction because of a question I should have thought relevant and proper in any sensible legal system. The court holds that a jury may not be told that both a witness and the defendant for whom he vouches belong to a prison gang bound by oath to lie on each others' behalf in open court, because, without more, that affiliation is not probative of the witness' credibility.

The line of questioning barred by the majority in this case is akin to inquiry respecting family ties, prior business relations, or the myriad other past or present associations that may cause a witness, consciously or otherwise, to color his testimony. There is consensus that such matters are admissible, as probative on the issue of bias. *See* 3 J. Weinstein & M. Berger, Evidence § 607[03] (1982 & Supp.1982); 3A J. Wigmore, Evidence § 949 (J. Chadbourn rev. 1970 & W. Reiser Supp.1982). Even with respect to the sensitive area of religion, the Advisory Committee's notes to the Federal Rules of Evidence make it clear that evidence of membership, if relevant to bias, is admissible. Fed.R.Evid. 610 advisory committee note. Indeed, if the tables were turned and a key prosecution witness were a member of a gang such as the one here, I should think it would be error to reject defense efforts to show bias through gang membership. *See Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974); *see generally* Weinstein, Evidence § 607[03].

I respectfully submit it is a mistake to require that routine bias questions meet the constitutional standards for proof of guilt in a criminal proceeding based on associational activity. The majority announces a sweeping prohibition against attempts to establish bias based upon a witness' membership in any organization or group, relying solely upon a Smith Act case and a criminal syndicalism case. *Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Even assuming *Scales* and its progeny have some relevance to the case before us, and I submit they do not, those cases do not prohibit all inferences from the fact of membership. They stand only for the proposition that membership alone is not sufficient for the imposition of a penalty, an issue not present in this case. The inference that a member of a cultist, disciplined prison gang might tend to color his testimony respecting another member from the same prison is a sensible conclusion of the sort used by men and women in their ordinary affairs, and the trier of fact ought to be able to draw it here.

Elementary evidentiary probes similar to those at issue here do not chill or infringe the constitutional right of free association. The first amendment concerns addressed in *Scales* and alluded to by the majority do not arise in the context of cross-examination of a witness as in this case. The witness who is impeached by membership in a group sworn to perjury is subject to no sanction other than that his testimony may be disbelieved. He may respond to the inquiry by either a confirmation or denial of membership, and his answers can be given appropriate weight by the trier of fact. Counsel for

the defendant, moreover, may ask further questions in order to correct any misleading inferences. Any danger that such questioning might mislead the jury or prejudice the defendant may be considered by the trial judge under Fed.R.Evid. 403, which is addressed to precisely such matters.

It was proper for the Government to call Ehle to rebut Mills' denial of membership in the prison gang. With the exception of prior criminal convictions, extrinsic evidence of specific instances of conduct ordinarily may not be introduced to attack or support a witness' credibility. Fed.R.Evid. 608(b); *United States v. Wood,* 550 F.2d 435, 441 (9th Cir.1976). Ehle's testimony in this case, however, goes not to Mills' general character for truthfulness or lack thereof, but to his particular bias or motive for testifying as he did. The bias or interest of an important witness is not collateral or irrelevant, and it is well-settled that extrinsic evidence is admissible, in the trial court's discretion, on that issue. *Barnard v. United States,* 342 F.2d 309, 317 (9th Cir.), *cert. denied,* 382 U.S. 948, 86 S.Ct. 403, 15 L.Ed.2d 356 (1965); *United States v. James,* 609 F.2d 36, 46 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); 3 J. Weinstein & M. Berger, Evidence § 607[03] (1982 & Supp.1982).

Of course, Ehle's rebuttal testimony also suggested that Abel himself belonged to the secret prison organization, which was prejudicial to him. Before allowing that testimony, the district court gave the matter particularly careful consideration, and dutifully performed on the record the required balancing of probative value and prejudicial effect. We accord such determinations of admissibility considerable deference on appeal, and will reverse them only for an abuse of discretion. *United States v. Palmer,* 691 F.2d 921, 923 (9th Cir.1982). There is nothing in the record of this case to suggest that the district court abused its discretion or that its determination should be overturned. To the contrary, the district court's consideration of the matter was thorough, deliberate, and well-reasoned. The Government's inquiry into Mills' connection to the secret prison organization

and Ehle's rebuttal testimony were entirely permissible.

I would affirm the conviction.