[No. 55899-0.    En Banc.    September 28, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. KATHRYN
FLADEBO, *Petitioner.*

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for petitioner.

*Michael E. Rickert, Prosecuting Attorney,* for respondent.

UTTER, J.—Kathryn Fladebo asks this court to review a Court of Appeals decision affirming her conviction in Skagit County for possession of a controlled substance. Ms. Fladebo raises two issues. First, she argues that the manner in which the Skagit County prosecutor brought the possession charge violated the speedy trial directives of CrR 3.3.[1] Second, she claims that her conviction was based upon evidence obtained through an allegedly unconstitutional search. We affirm the Court of Appeals.

Ms. Fladebo was involved in an automobile accident in Mount Vernon on October 21, 1986. The police officers investigating the scene noticed that Ms. Fladebo appeared

---

[1]The operative language of CrR 3.3, as relevant here, states in part:

"**(c) Time for Arraignment and Trial.**

"(1) *Cases Filed Directly in Superior Court.* . . . A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment. A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment.

"(2) *Cases Filed Initially in District Court.*

"(i) . . . A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment, less time elapsed in district court. A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment, less time elapsed in district court."

intoxicated: she slurred her words and had trouble standing up. Because she had no alcohol on her breath, the officers suspected that Ms. Fladebo was under the influence of other drugs. The officers conducted an on–the–scene horizontal eye gaze nystagmus test, which suggested a high level of intoxication. Accordingly, they issued Ms. Fladebo a municipal court citation for driving while under the influence of intoxicants (DWI) in violation of Mount Vernon Municipal Code 10.04.

The officers put Ms. Fladebo into a patrol car. One of them immediately returned to Ms. Fladebo's car, where a passenger remained. Upon being asked, the passenger identified the purse in the seat next to her as Ms. Fladebo's. The officer seized the purse and brought it to the patrol car where Ms. Fladebo was sitting. While in the patrol car and in Ms. Fladebo's presence, the officer searched inside the purse. In the purse he found a drug kit containing four hypodermic needles, a spoon, and some cotton covered with brown residue. Later that day, Ms. Fladebo identified the brown residue as heroin. These items were sent to the state crime laboratory for testing.

The police officers took Ms. Fladebo to the Mount Vernon Police Department and booked her for DWI. The police obtained a search warrant to conduct tests of Ms. Fladebo's blood and urine. At arraignment in Mount Vernon Municipal Court for this charge on October 27, 1986, Ms. Fladebo pleaded not guilty. After negotiations, she later entered a guilty plea to the charge of reckless driving.

On December 2, 1986, the state crime laboratory informed the Mount Vernon Police Department that the paraphernalia found in Ms. Fladebo's purse contained heroin. Some time later, on February 17, 1987, the Skagit County prosecutor charged Ms. Fladebo with possession of a controlled substance under RCW 69.50.401(d), a felony.

Before trial on the possession charge in the Superior Court for Skagit County, Ms. Fladebo moved to suppress the evidence of the drug paraphernalia, alleging it to be the fruit of an unconstitutional search. She also moved, for the

first time, to dismiss the charge for violation of speedy trial rules, CrR 3.3. Specifically, she argued that she was charged with possession over 90 days after her arraignment for DWI. She maintained that since the two charges arose from the same criminal episode, the arraignment for the charge from the first offense marked the beginning of the 90–day speedy trial period set by CrR 3.3.

The trial court denied both of these motions. Following this denial and aiming to preserve legal issues on appeal, Ms. Fladebo stipulated to the contents of the police reports, the physical evidence obtained from the search, and the testimony of the police officers. On the basis of this stipulated evidence, the court entered a verdict of guilty. Ms. Fladebo appealed her conviction to the Court of Appeals, Division One. In a published opinion, that court affirmed the trial court's rulings. *State v. Fladebo*, 53 Wn. App. 116, 765 P.2d 1310 (1988).

I

Ms. Fladebo first argues that her charge for possession of a controlled substance came too late to satisfy the rules for a speedy trial, CrR 3.3. She maintains that the speedy trial period should begin at the same time for all offenses "'based on the same conduct or arising from the same criminal incident'". *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978). Ms. Fladebo was arraigned on her DWI charge on October 27, 1986. If the 90–day speedy trial period arising from that offense is applicable to the possession of a controlled substance charge, then the latest time for trial on the latter charge would have been Friday, January 23, 1987. The possession charge was not filed until February 17, 1987; accordingly, she argues that it should be dismissed. Ms. Fladebo bases her argument on the text of CrR 3.3, this court's decision in *State v. Peterson, supra*, and the Court of Appeals decisions of *State v. Erickson*, 22 Wn. App. 38, 587 P.2d 613 (1978), and *State v. Bradley*, 38 Wn. App. 597, 687 P.2d 856, *review denied*, 102 Wn.2d 1024 (1984).

■■ As petitioner points out, the text of CrR 3.3 does not explicitly address the situation presented, where a defendant is, at different times and in different courts, charged with multiple offenses arising from the same arrest and the evidence for one of the charges is not complete until some time after the arraignment for the first charge. When CrR 3.3 is silent, however, Washington courts have often looked to the *ABA Standards Relating to Speedy Trial* as an interpretive supplement. *See, e.g., State v. Striker,* 87 Wn.2d 870, 873–74, 557 P.2d 847 (1976); *State v. Parmele,* 87 Wn.2d 139, 142, 550 P.2d 536 (1976). Ms. Fladebo points in particular to ABA Standard 2.2, applied by this court in *State v. Peterson, supra,* to address a similar situation. That standard, in its current form, states in part:

> The time for trial should commence running, without demand by the defendant, as follows:
> (a) from the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date the defendant was held to answer;

2 American Bar Ass'n, *Standards for Criminal Justice,* Std. 12–2, at 12–17 (2d ed. 1980).[2]

The ABA Standard does address the situation where multiple charges arise from the same criminal episode. It does not, however, completely clarify all the aspects of the situation presented, especially that of different jurisdictions with separate prosecutorial responsibilities. Nonetheless,

---

[2]The commentary to this standard defines the word "episode" as: "'an occurrence or connected series of occurrences and developments which may be viewed as distinctive and apart although part of a larger or more comprehensive series.' This would cover the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnapping and robbery." (Footnotes omitted.) 2 American Bar Ass'n, *Standards for Criminal Justice,* Std. 12–2.2, Commentary at 12–21 (2d ed. 1980).

petitioner argues that her case should be dismissed on the basis of this standard. The real issue then becomes whether the State should be penalized for failing to adhere to rules which are not specifically on point.

A criminal defendant's assurance of a speedy trial is guaranteed by the federal and state constitutions. U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). The superior court speedy trial rules themselves are not of constitutional magnitude and a violation of the rules is not necessarily a constitutional deprivation. *State v. White,* 94 Wn.2d 498, 501, 617 P.2d 998 (1980); *State v. Mack,* 89 Wn.2d 788, 793, 576 P.2d 44 (1978). If the superior court rules—as well as the ABA Standards often used to interpret them—are inapplicable to a potential speedy trial situation, then these constitutional protections provide the defendant's ultimate safeguard.

The threshold for a constitutional violation is much higher than that for a violation of the superior court rules. The actual determination of a violation of the constitutional speedy trial right "necessitates a functional analysis of the right in the particular context of the case". *Barker v. Wingo,* 407 U.S. 514, 522, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). In *Barker,* the United States Supreme Court devised a balancing test for determining when a criminal defendant's right to a speedy trial is violated. The Court identified four major factors to consider in this balance: the length of the delay, the reason for the delay, whether or not the defendant asserted the right, and the prejudice to the defendant. *Barker,* 407 U.S. at 530. The factors must be considered together "with such other circumstances as may be relevant." *Barker,* at 533; *see also Solem v. Helm,* 463 U.S. 277, 295, 77 L. Ed. 2d 637, 103 S. Ct. 3001 (1983). This court has previously developed a somewhat similar test for deprivations of the right under Const. art. 1, § 22 (amend. 10). *See State v. Christensen,* 75 Wn.2d 678, 686, 453 P.2d

644 (1969); *State v. Bradfield,* 29 Wn. App. 679, 683, 630 P.2d 494 (1981).[3]

Ms. Fladebo, however, does not argue that her constitutional right to a speedy trial has been violated. She bases her argument solely on the superior court rules. Indeed, the factors surrounding her case do not point to a violation of the guaranties of either the state or federal constitutions. The time in which her second charge was delayed was relatively short; moreover, she was at liberty during that time. The Skagit County prosecutor's reasons for not bringing the possession charge within the 90-day period after the DWI arraignment were understandable and justified: CrR 3.3 and the ABA Standards were not entirely on point and the physical evidence was not available until December 2, 1986. Ms. Fladebo's defense was not prejudiced by the delay; her defense, in fact, was based in large part on CrR 3.3 itself. In addition, she did not inform the court or the prosecutor of her intent to rely on the speedy trial rules until after the 90-day period had expired—she first raised the issue in motions before trial.

The superior court speedy trial rules were not designed to be a trap for the unwary. Where the rules are unclear, the defendant is not prejudiced by a minor delay, and the defendant has not informed the prosecutor of his or her intent to rely on the rules before the speedy trial period has expired, we will not direct a dismissal of the charges. *Cf. Barker v. Wingo, supra; State v. Christensen, supra.*

---

[3]The factors identified by this court in interpreting Const. art. 1, § 22 (amend. 10) are:

> (1) a delay of such length alone as to amount to a denial of the right to a speedy trial; (2) prejudice to the defense arising from the delay; (3) a purposeful delay designed by the state to oppress the defendant; or (4) long and undue imprisonment in jail awaiting trial.

*State v. Christensen,* 75 Wn.2d at 686. Because the petitioner has made no argument asserting a constitutional violation, we need not address any possible differences between the state and federal constitutional protections.

## II

Ms. Fladebo also argues that the search of her purse conducted immediately after her arrest was unconstitutional, violating Const. art. 1, § 7. The thrust of her argument centers on this court's opinion in *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986).

In constructing her argument, Ms. Fladebo stresses *Stroud's* example of balancing the exigencies of an arrest against the privacy interest of the individual. *Stroud* presented a bright line rule for determining the scope of a warrantless search of an automobile incident to an arrest: the police can search the contents of the passenger compartment exclusive of locked containers or locked glovebox. *Stroud,* at 152. Ms. Fladebo argues that a woman's purse traditionally carries with it the same notions of privacy as those associated in *Stroud* with locked containers. These notions of privacy are so strong, she maintains, that purses are not manufactured with locks. Thus, Ms. Fladebo seeks to extend the *Stroud* rule to include women's purses along with locked containers.

■ A purse, however, is not a locked container. Consequently, it does not fall within *Stroud's* exception. The *Stroud* locked container rule carries a double purpose. It identifies a point at which privacy interests outweigh the exigencies of an arrest and, by allowing the search of unlocked containers, helps to protect the arresting officer from danger. An unlocked purse could well conceal a readily useable weapon.

Ms. Fladebo also argues that the exigency allowing the search incident to arrest terminates when the arrestee is placed securely in the police car. She maintains that the conceptual underpinnings of the search incident to arrest disappear when the dangers associated with the automobile arrest are over: that is, when the suspect no longer presents a danger to the officers or to the preservation of physical

evidence. For this proposition, petitioner points to the rationale behind *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), and cites the examples of *United States v. Vasey,* 834 F.2d 782 (9th Cir. 1987), and *State v. Boyce,* 52 Wn. App. 274, 758 P.2d 1017 (1988).

In *Belton,* the United States Supreme Court applied the search incident to arrest rationale developed in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) to an arrest involving an automobile. *Chimel's* "grab zone"—that area surrounding an arrestee in which he or she might grab destructible evidence or a weapon and therefore searchable without a warrant if incident to an arrest—was expanded in this new context. The Court stated: "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Footnote omitted.) *Belton,* 453 U.S. at 460. As a consequence, the exigency, as in *Chimel,* remained dependent on its closeness in time to the arrest.

In *United States v. Vasey, supra,* police conducted a warrantless search of the defendant's vehicle 30 to 45 minutes after he was arrested, handcuffed, and placed in the police car. The Ninth Circuit Court of Appeals held that this warrantless search violated the search–incident–to–arrest principles developed in *Belton* and *Chimel.* In particular, the search was not contemporaneous with the arrest and the area searched was not within the arrestee's immediate control. Consequently, the exigencies justifying such a search no longer existed. *Vasey,* at 786–87.

The Washington Court of Appeals reached an analogous result in *State v. Boyce, supra.* In that case, the police transported the defendant to the county jail before conducting the search incident to the arrest. The court refused to extend the *Stroud* rule—evolved around the defendant's presence at the arrest site—to a situation where the defendant actually had been removed from the scene. *Boyce,* 52 Wn. App. at 278.

Ms. Fladebo's case is distinguishable. It is entirely different from the facts of *Boyce*: Ms. Fladebo was not physically removed from the scene of the arrest before the search of her purse. As for *Vasey,* the Ninth Circuit court found its fact situation to be conceptually different from searches that "followed closely on the heels of the arrest." *Vasey,* at 787. The court noted that properly timed searches incident to an arrest can be valid "even when the arrestee has been taken from a vehicle and handcuffed." *Vasey,* at 787. The court cited cases from several circuits to that effect. *See United States v. McCrady,* 774 F.2d 868, 871–72 (8th Cir. 1985); *United States v. Cotton,* 751 F.2d 1146, 1149 (10th Cir. 1985); *United States v. Abel,* 707 F.2d 1013, 1015 n.3 (9th Cir. 1983), *rev'd on other grounds,* 469 U.S. 45, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984). Further, *State v. Stroud, supra,* upon which petitioner relies primarily, specifically allows for the timing of which petitioner now complains:

> During the arrest process, *including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car,* officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence.

(Italics ours.) *Stroud,* 106 Wn.2d at 152. Ms. Fladebo does not explicitly argue that *Stroud* was wrongly decided on this point, nor does she present a compelling argument why her case is distinguishable from the cases cited with favor in *Vasey.* Accordingly, her Const. art. 1, § 7 argument has no merit.

We affirm the result of the Court of Appeals.

CALLOW, C.J., and BRACHTENBACH, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DORE, J., concurs in the result.

PEARSON, J. (dissenting)—I dissent. Today, the majority ignores all controlling case law on point, and in doing so creates virtual uncertainty for every practitioner and trial court attempting to comply with the speedy trial rule.

On October 21, 1986, Ms. Fladebo was cited for driving while under the influence of intoxicating drugs. At the time of her arrest, the arresting officer was aware that Ms. Fladebo was a substance abuser. Upon searching her purse, the officer discovered four hypodermic needles, other narcotics paraphernalia including a spoon and cotton, and what he believed to be a controlled substance.

On October 27, 1986, Ms. Fladebo waived arraignment and entered a plea of not guilty to the charge of driving while under the influence. On February 18, 1987, 114 days after her arraignment on the DWI charge, the Skagit County Prosecuting Attorney charged Ms. Fladebo, by way of information, with criminal possession arising out of the October 21, 1986, arrest. Ms. Fladebo timely filed a motion to dismiss under CrR 3.3. The trial court denied her motion. I would hold the failure to dismiss was error, as violative of Ms. Fladebo's right to a speedy trial.

"A defendant released from jail . . . shall be brought to trial not later than 90 days after the date of arraignment." CrR 3.3(c)(1). As the majority notes, this rule does not directly address when the 90-day period begins to run if the State files an additional charge against a defendant already being held for another crime arising out of the same episode. Consistent with commentary and all case law on point, I would reverse the Court of Appeals decision for all of the reasons stated by the majority at page 391.

In *State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978), Justice Utter, writing for a unanimous court, held, since CrR 3.3 contains

> no provisions which contemplate separate charges from the same conduct filed years apart, we look to ABA standards to provide supplemental interpretation. Standard 2.2 recommends that the time within which trial must be held should begin on all crimes "based on the same conduct or arising from the same criminal incident" from the time the defendant is held to answer any charge with respect to that conduct or episode.

*State v. Peterson*, 90 Wn.2d at 431 (quoting *ABA Standards Relating to Speedy Trial* (Approved Draft, 1968)). In

*State v. Peterson, supra,* this court adopted a former draft of ABA standard 2.2 as determinative of the issue at hand.

Today that standard provides:

> The time for trial should commence running, without demand by the defendant, as follows:
>
> (a) from the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the crime or *a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date the defendant was held to answer*;

(Italics mine.) 2 American Bar Ass'n, *Standards for Criminal Justice,* Std. 12–2.2, at 12.17 (2d ed. 1980).

A former draft of the Standard was cited with approval in *State v. Erickson,* 22 Wn. App. 38, 587 P.2d 613 (1978). In that case, the defendant was arrested for burglary and reckless driving on May 11, 1977. During an impound inventory search of the defendant's vehicle, a pistol was found in the glove compartment. As early as the following day, the prosecutor's office was aware the defendant had numerous prior felony convictions. On May 13, 1977, the defendant entered a plea of not guilty on the burglary charge. On July 15, 1977, the charge was dismissed, as the defendant had been in continuous custody for 65 days. Nevertheless, on August 4, 1977, the State charged the defendant with illegal possession of a pistol stemming from his May 11, 1977, arrest. The court held the illegal possession of the pistol arose out of the same criminal episode as the burglary, and thus the State's failure to bring the defendant to trial on the additional charge within the same time frame was violative of CrR 3.3:

> [I]f the State does not charge a defendant with all related offenses arising out of the same criminal conduct or episode as soon as it has probable cause to do so it runs the risk of a dismissal for failure to provide a speedy trial.

*State v. Erickson,* 22 Wn. App. at 45.

Finally, in *State v. Bradley,* 38 Wn. App. 597, 687 P.2d 856, *review denied,* 102 Wn.2d 1024 (1984), the court, consistent with all prior case law, again applied the "same episode" speedy trial rule. In that case, the investigating

officer cited the defendant for misdemeanor possession of marijuana, and also reported the incident to the prosecuting attorney for a possible felony charge of attempting to elude a pursuing police vehicle. Citing *State v. Peterson, supra,* the court held, "the charges arose from the same criminal episode, and therefore the starting point for computation of speedy trial time is the same for both charges." *State v. Bradley,* 38 Wn. App. at 599.

Despite these unquestioned precedents, the majority today holds the ABA Standard inapplicable where the two charges arising out of the same episode are prosecuted in different jurisdictions. The majority ignores that in *State v. Bradley, supra,* as in the case today, one of the charges was filed in a court of limited jurisdiction, while the other was a felony prosecution in superior court.

More startling are the facts in *State v. Peterson, supra.* In that case, the defendant was captured by police on January 17, 1975, while fleeing from the scene of an armed robbery. The defendant was booked on charges of robbery and assault. Subsequently, the defendant was transferred to the custody of federal officials. Ultimately, the defendant pleaded guilty to the federal charges and was confined in the federal penitentiary. Finally, on January 11, 1977, the State filed charges against the defendant stemming from the January 1975 episode. Despite the State's argument that the defendant's incarceration in federal prison should alter the application of CrR 3.3, this court unanimously applied ABA Standard 2.2 even though one of the charges was prosecuted in another jurisdiction. Therein, Justice Utter wrote:

> *CrR 3.3 and its time limits apply uniformly to all persons held to answer for a crime.* This includes persons incarcerated elsewhere as well as those who are not. The exceptions [to CrR 3.3] provide all necessary relief from the time limits if a defendant is on trial elsewhere or unavailable through lack of cooperation or delayed cooperation of *another jurisdiction.*

(Italics mine.) *State v. Peterson,* 90 Wn.2d at 429.

The majority today not only creates certain confusion for practitioners and courts, but it additionally ignores any

reverence for stare decisis, not to mention fundamental fairness to criminal defendants. It is apparent the majority has overruled, albeit *sub silentio,* much more than the rule previously applicable in today's case. Confusing constitutional analysis with speedy trial rules, the majority opens the door for this court to be inundated with cases claiming an exception to what was previously a bright–line rule. If one can show the delay was relatively short (does this mean the 90–day rule is now 95?), and if one can show no prejudice inhered, then perhaps the rule no longer applies. Under the majority's analysis, it would appear, every violation of the speedy trial rule is to be measured against constitutional standards. Such a test renders the rule meaningless. In the end, the majority states the "speedy trial rules were not designed to be a trap for the unwary", Majority opinion, at 394; and yet, in fashioning an exception to a rule relied upon daily by every criminal court in this state, the majority ensnares much more than the unwary prosecutor.

Given my analysis on the speedy trial issue, I would not reach the additional issue reached by the majority. Nevertheless, I am constrained by the majority's application of the rule announced in *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986), to question that rule's applicability in the case at hand. Absent a more searching analysis balancing the expectation of privacy in a closed purse, where the defendant sits handcuffed in the back of the police vehicle, I would not so briskly conclude there has been no violation of Const. art. 1, § 7. As stated, in this case the issue need not be reached.

Accordingly, I would reverse the decision of the Court of Appeals.

DOLLIVER, J., concurs with PEARSON, J.