USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 93-2249 UNITED STATES OF AMERICA, Plaintiff, Appellee, v. JOHN R. DOWARD, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________  ____________________ Before Cyr and Stahl, Circuit Judges, ______________ and DiClerico,* Chief District Judge. ____________________  ____________________ Paul J. Garrity for appellant. _______________ Jean L. Ryan, Assistant United States Attorney, with whom Paul M. ____________ _______ Gagnon, United States Attorney, was on brief. ______  ____________________ December 14, 1994  ____________________  ____________________ *Of the District of New Hampshire, sitting by designation. CYR, Circuit Judge. After entering a conditional plea CYR, Circuit Judge. _____________ of guilty, and reserving the right to appeal an earlier order rejecting his motion to suppress a .38 caliber handgun seized incident to his arrest, see Fed. R. Crim. P. 11(a)(2), defendant ___ John R. Doward was convicted and sentenced in the District of New Hampshire on a one-count indictment charging possession of a firearm by a convicted felon, see 18 U.S.C. 922(g)(1), ___ 924(e)(1). Doward contends that a warrantless search of the hatch area of the two-door Ford Mustang which he was driving immediately before the arrest violated the Fourth Amendment. See ___ U.S. Const. amend. IV. We affirm the district court judgment. I I BACKGROUND BACKGROUND __________ The relevant facts are not in dispute. On October 18, 1992, Officers James Tareco and Robert Oxley of the Manchester Police Department stopped the Ford Mustang after it made an illegal turn. Ten minutes later, a routine license check dis- closed that Doward was wanted in Ohio on an outstanding arrest warrant. Doward was ordered out of the car, arrested, hand- cuffed, and then placed in a nearby police cruiser, awaiting transport to the police station. Meanwhile, the male passenger in the right front seat had been instructed to get out of the Ford Mustang and remain on the sidewalk as the front and back seat areas were searched. Although the hatch area was accessible from the back seat, 2 Officer Tareco chose to gain access by unlocking the hatch from outside the vehicle. The hatch area was found to contain two partially zipped suitcases. In the first suitcase he searched, Tareco discovered a gun cleaning kit and ammunition. During the search, Doward's daughter suddenly emerged from the gathering crowd and informed Tareco that the Ford Mustang belonged to her, but the suitcases did not. At this point, the police van arrived and Doward was transported to the station. Resuming the search, Officer Oxley seized the loaded .38 caliber handgun from the second suitcase discovered in the hatch area. Three minutes had elapsed since Doward's arrest; thirty seconds since he was transported from the scene. Doward's daughter was arrested shortly thereafter, when a further check revealed that she too was wanted on an outstanding arrest war- rant. II II DISCUSSION DISCUSSION __________ The government is required to establish that the hatch- area search which yielded the .38 caliber handgun came within a recognized exception to the Fourth Amendment warrant requirement. See United States v. Jeffers, 342 U.S. 48, 51 (1951). The ___ ______________ _______ government defends the search as "a contemporaneous incident of [Doward's] arrest." See New York v. Belton, 453 U.S. 454, 460 ___ ________ ______ (1981). Doward argues that the search which yielded the handgun 3 was not sufficiently contemporaneous with his arrest because the handgun was seized after he had been removed from the scene, at a _____ time when there was no conceivable risk that he could have reached it. Thus, even if the handgun were the fruit of an automobile passenger-compartment search commenced as a contem- _________ poraneous incident of his arrest, Doward would urge a per se ___ __ suppression rule as to any evidence seized after the arrestee has been removed from the scene and the security rationale for the Belton rule no longer obtains. See, e.g., State v. Badgett, 512 ______ ___ ____ _____ _______ A.2d 160, 169 (Conn.) (holding that the right to continue a Belton search "ceases the instant the arrestee departs the ______ scene"), cert. denied, 479 U.S. 940 (1986); State v. Fry, 388 ____ ______ _____ ___ N.W.2d 565, 577 (Wis.) (same), cert. denied, 479 U.S. 989 (19- ____ ______ 86).1 Alternatively, Doward argues that the hatch area was not  ____________________ 1Since Doward simply contrasts the present case with those in which an arrestee remains in close proximity to the vehicle and continues to pose at least some unpredictable, albeit slight, risk to the security of the officers or the evidence (e.g., ____ arrestee handcuffed in back of guarded police cruiser), we do not understand him to challenge the great weight of authority which holds that Belton's bright-line rule applies even in cases where ______ the arrestee is under physical restraint and at some distance from the automobile during the search. See, e.g., United States ___ ____ _____________ v. Jackson, 918 F.2d 236, 240 (1st Cir. 1990) (arrestee hand- _______ cuffed in police cruiser); United States v. White, 871 F.2d 41, _____________ _____ 43 (6th Cir. 1989) (in police cruiser); United States v. Karlin, _____________ ______ 852 F.2d 968, 970-71 (7th Cir. 1988) (handcuffed in police cruiser), cert. denied, 489 U.S. 1021 (1989); United States v. _____ ______ _____________ Cotton, 751 F.2d 1146, 1148 (10th Cir. 1985) (handcuffed); ______ United States v. Collins, 668 F.2d 819, 821 (5th Cir. 1982) ______________ _______ (same); see also Traylor v. State, 458 A.2d 1170, 1174 (Del. ___ ____ _______ _____ 1983) (outside car, handcuffed); State v. Wheaton, 825 P.2d 501, _____ _______ 502-03 (Idaho 1992) (handcuffed in police cruiser); State v. _____ Miskolczi, 465 A.2d 919, 920-21 (N.H. 1983) (same); State v. _________ _____ Hensel, 417 N.W.2d 849, 852-53 (N.D. 1988) (same); State v. ______ _____ Fladebo, 779 P.2d 707, 711-12 (Wash. 1989) (in cruiser); cf. _______ ___ United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (citing _____________ _____ 4 subject to a warrantless "contemporaneous" search incident to arrest, because the hatch area is more akin to an automobile trunk, which the Belton Court clearly differentiated from the ______ "passenger compartment." Consequently, he insists, the trial court was required to conduct a post hoc analysis as to whether ____ ___ either vehicle occupant could have reached into the hatch area for a weapon or evidence. Since Doward's arguments test the temporal and spatial limits of the bright-line rule announced in Belton, its context ______ and rationale must be parsed exactingly at the outset. As a general rule, a lawful custodial arrest may be accompanied by a ______ warrantless search not only of the arrestee's "person" but the ______ area within the arrestee's "immediate control" for "any _________ _______ weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape [and jeopardize] . . . the officer's safety," as well as for "evidence on the arrestee's person [or in 'the area into which an arrestee might reach in order to grab a weapon or evidentiary items'] in order to prevent its concealment or destruction . . . ." Chimel v. California, 395 U.S. 752, 762- ______ __________ 63 (1969) (invalidating, as overbroad, search of entire residence _________ in which owner was arrested) (emphasis added). Some years later, in Belton, supra, the Court outlined the scope of the zone of ______ _____ _____ "immediate control," see Chimel, 395 U.S. at 763, in the context ___ ______ of a warrantless security search of an automobile passenger compartment conducted as a contemporaneous incident of the  ____________________ United States v. Abel, 707 F.2d 1013, 1015 n. 3 (9th Cir. 1983)). _____________ ____ 5 arrests of all its occupants. Belton upheld a warrantless search ______ of the entire "passenger compartment" against a claim that all its occupants were outside the vehicle at the time of the search _______ thus, as a practical matter, no longer within "reach" of any weapons, evidence or contraband located within the passenger compartment. Belton, 453 U.S. at 460.  ______ Alluding to the difficulties encountered by lower courts in adapting for application to arrest-related automo- bile searches the "immediate control" concept announced in Chimel, the Belton Court's opinion stressed that its bright-line ______ ______ rule was designed to foster both privacy and law enforcement interests: "[T]he protection of the Fourth and Fourteenth __________ Amendments 'can only be realized if the police are acting under a ___ ____ __ ________ __ set of rules which, in most instances, makes it possible to reach ___ __ _____ __ ____ _________ _____ __ ________ __ _____ a correct determination beforehand as to whether an invasion of _ _______ _____________ __________ privacy is justified in the interest of law enforcement,'" id. at ___ 458 (citation omitted) (emphasis added), especially since police officers engaged in an arrest on the highway have "only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." Id. at 458-59 (noting earlier Supreme Court cases ___ rejecting the view that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a ______ lawful arrest") (citation omitted) (emphasis added). The Belton Court explicitly predicated its bright-line ______ 6 rule on "the generalization that articles inside the relatively ______________ narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into ____ __ ___ __________ ____ which an arrestee might reach in order to grab a weapon or _____ evidentiary [item].'" Id. at 460 (quoting Chimel, 395 U.S. at ___ ______ 763) (emphasis added). Against this pragmatic framework the Court articulated its bright-line rule: "we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that _______________ ________ __ ____ arrest, search the passenger compartment of that automobile," and ______ "examine the contents of any [open or closed] containers found within the passenger compartment . . . ." Id. (footnote omitted) ___ (emphasis added).2 Finally, the scope of the "passenger com- partment" under the bright-line rule announced in Belton would ______ not encompass the trunk. Id. at 460-61 n.4.  ___ We think Belton leaves no doubt that post hoc analyses ______ ____ ___ like those presently urged by Doward are precluded. The Belton ______ majority's circumspect use of the discrete phrase "contemporane-  ____________________ 2The Belton bright-line rule likewise extends to any con- ______ ___ tainer within the passenger compartment even though its outward appearance might foreclose the possibility that it could hold a weapon or evidence: "The authority to search the person incident ___ ______ to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may ___ ______ later decide was the probability in a particular arrest situation ___________ that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on proba- ble cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Belton, 453 U.S. at 461 ______ (citing United States v. Robinson, 414 U.S. 218, 235 (1973)) _____________ ________ (emphasis added). 7 ous incident of that arrest," rather than the less expansive ________ phrase "contemporaneous with that arrest" as Doward would have ____ us read it plainly implies a greater temporal leeway between the custodial arrest and the search than Doward advocates. Moreover, the temporal limitation urged by Doward would undermine Belton's bright-line rule by requiring courts to second-guess the ______ security assessments made by law enforcement officers at the scene.3 Nor is the variant urged by Doward consonant with the bright-line rule as the Court articulated it. Nothing in the majority opinion even remotely implies that law enforcement officers must discontinue a passenger-compartment search  ___________ properly initiated as a contemporaneous incident of an occupant's ________ arrest the instant the arrestee is transported from the scene. As must be the usual case in automobile-related arrests, Belton and the three passengers were no longer in the vehicle when the automobile search began. Although their location outside the vehicle virtually eliminated any chance that they could "reach"  ____________________ 3We need not consider whether the time span between an automobile-related arrest and the initiation of a warrantless __________ search of the passenger compartment might become so protracted as to raise judicial eyebrows in an exceptional case, see, e.g., ___ ____ United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (dis- _____________ _____ tinguishing invalid automobile search, occurring 30-45 minutes after arrest, from searches which "followed closely on the heels of the arrest"), since this is anything but an exceptional case. The officers initiated the three-minute contemporaneous search _________ immediately after Doward was placed under arrest, and completed it within thirty seconds after he was transported from the scene. ______ _______ Compare United States v. Lugo, 978 F.2d 631, 634 (10th Cir. 1992) _______ _____________ ____ (invalidating search initiated after arrestee left scene) with _________ ____ United States v. McCrady, 774 F.2d 868, 871-72 (8th Cir. 1985) ______________ _______ (upholding search initiated after arrestee left scene).  _________ 8 into the passenger compartment for any purpose, the Court con- spicuously passed up the opportunity to limit its bright-line rule by requiring that the warrantless search cease once all occupants were removed from the passenger-compartment.4 In- stead, the Belton majority opted to relax Chimel's residence- ______ ______ _________ related arrest rationale in automobile-related arrests lest its fact-intensive inquiries immerse the courts in second-guessing security decisions made by law enforcement officers in rapidly evolving circumstances fraught with unpredictable risks to life and limb. See, e.g., United States v. Karlin, 852 F.2d 968, 971 ___ ____ _____________ ______ (7th Cir. 1988) (hindsight-based probability determinations would eviscerate Belton bright-line rule); see also United States v. ______ ___ ____ ______________ McCrady, 774 F.2d 868, 871-72 (8th Cir. 1985) (upholding search _______ initiated after arrestee had left the scene).5 _________  ____________________ 4Indeed, as the dissent noted, see Belton, 453 U.S. at 468 ___ ______ (Brennan, J., dissenting), "the result would presumably be the same even if [the police officer] had handcuffed Belton . . . in the patrol car . . . ." See also supra note 1. ___ ____ _____ 5Although such considerations are not determinative, the unpredictable developments ultimately confronting the officers in this case clearly vindicate the Belton rationale. The male ______ passenger in the Ford Mustang remained in close proximity to the vehicle during the arrest and the ensuing search. Moreover, Doward's daughter, who also unbeknownst to the officers was subject to an outstanding arrest warrant, unexpectedly approached the officers from out of the gathering crowd. With only two officers available to search the vehicle and deal with this potentially dangerous situation, a decisional rule which would require judicial second-guessing of the need to continue the passenger-compartment search after Doward had been transported from the scene would eviscerate Belton's bright-line rule. ______ Furthermore, the Belton rationale would be undermined were a ______ temporal limit to be drawn, as Doward urges, after Officer _____ Tareco's valid warrantless search of the first suitcase had disclosed the gun cleaning kit and ammunition, which afforded reasonable cause to believe that the passenger compartment would 9 Doward further contends, in the alternative, that the hatch area was not subject to contemporaneous search under the bright-line rule announced in Belton, as it is more akin to an ______ automobile trunk, which Belton was careful to differentiate from ______ the "passenger compartment." See Belton, 453 U.S. at 460-61 n.4. ___ ______ Consequently, he argues, the district court was required to determine whether any vehicle occupant could have reached into the hatch area while inside the Ford Mustang. And he asks this court to take judicial notice that the Ford Mustang hatchback he was driving had large interior dimensions which would make it impossible to reach into the hatch area from his position in the front seat. We believe Belton unmistakably forecloses all such post ______ ____ facto inquiries on actual "reachability." As we have noted, the _____ Court expressly predicated its bright-line rule on "the general- ________ ization that articles inside the relatively narrow compass of the _______ passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee ____ __ ___ __________ might reach in order to grab a weapon or evidentiary [item].'" Id. at 461 (citation omitted) (emphasis added). Thus, the only ___ question the trial court asks is whether the area searched is generally "reachable without exiting the vehicle, without regard _______ _______ ___ _______ to the likelihood in the particular case that such a reaching was possible." 3 Wayne R. Lafave, Search and Seizure: A Treatise on _________________________________  ____________________ be found to contain a loaded firearm, a core concern undergirding both Chimel and Belton.  ______ ______ 10 the Fourth Amendment 7.1(c), at 16-17 (2d ed. 1987) (collecting ____________________ cases) (emphasis added). The uncovered hatch area in this two- door Ford Mustang unlike a trunk generally is accessible from within the passenger compartment. Consequently, it is immaterial to the present analysis that the police elected to gain access by opening the outside lock on the hatch. The district court judgment is affirmed. The district court judgment is affirmed. _______________________________________ 11