[No. 44834.   En Banc.   August 31, 1978.]

THE STATE OF WASHINGTON, Appellant, v. EDWARD G. PETERSON, Respondent.

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf* and *Timothy P. Ryan, Deputies,* for appellant.

*Peter G. Rothschild* of *Snohomish County Public Defender,* for respondent.

UTTER, J.—The Superior Court for Snohomish County dismissed all charges filed by the prosecuting attorney of Snohomish County against Edward G. Peterson, respondent herein, on the ground that the provisions of CrR 3.3 had not been followed. Snohomish County, as appellant herein, raises three issues: (1) whether the prosecutor's action violated CrR 3.3 providing for trial within 90 days, or 60 days if the defendant is in custody, after the time of preliminary appearance; (2) whether RCW 9.100 controls and makes CrR 3.3 inapplicable; and (3) whether a new

charge based on the same incident, filed for the first time in 1977, is proper even if the old charge is dismissed. We hold the trial court ruled properly in finding CrR 3.3 had been violated and in finding the prosecutor's other contentions to be without merit.

Respondent committed an armed robbery on January 17, 1975, in Marysville. Two officers were summoned to the scene and chased respondent, who fired at them as they were involved in a high–speed chase. Respondent was captured and booked in Snohomish County on charges of robbery and assault. He was then transferred to King County to the custody of federal officials where the federal court set bail on federal charges at $10,000. Concern was expressed by some personnel in Snohomish County law enforcement over the low amount of this bail. The trial court's oral opinion indicated this concern was the motivation behind filing a complaint in Snohomish County district court charging assault in the first degree. Bail was set on that charge at $100,000 and a detainer was placed on respondent. Respondent pleaded guilty to the federal charge in March 1975, and was confined in McNeil Island federal penitentiary on those charges in May 1975. The detainer followed him.

No one took action on the Snohomish County charges until March 1976. Indeed, respondent apparently did not become aware of the detainer against him until that time. Since then, he has continually attempted to obtain a disposition on those charges. He immediately filed a motion in the Superior Court for Snohomish County to dismiss the charges, a copy of which was sent to the county sheriff. He next petitioned this court for disposition of the charges, and was advised that the petition should be filed in the Court of Appeals. A copy of the Supreme Court Clerk's response was sent to the Snohomish County Prosecuting Attorney. Respondent followed this advice and filed a personal restraint petition with the Court of Appeals in July 1976. Finally, on August 5, 1976, respondent took action which forced the Snohomish County prosecutor to

respond—he made formal request for dismissal of the charges under the agreement on detainers act, RCW 9.100. On January 10, 1977, the Snohomish County prosecutor's office agreed with federal prison officials to take custody of the respondent. The next day an information was filed charging respondent with two counts of assault in the first degree. One count was essentially the same as the assault charge filed by complaint in district court 2 years earlier. The other was connected with the same incident but related to another victim.

The record fails to reflect any action by the prosecutor designed to bring respondent to trial until after respondent's formal request under RCW 9.100, and appellant concedes that until that time no effort was made to locate, and determine the availability of, the respondent. After filing the complaint and obtaining a warrant in district court, the prosecutor took no additional steps to seek disposition of the outstanding charges against the respondent.

I

CrR 3.3 mandates that a defendant be tried within 90 days, or, if unable to obtain pretrial release then within 60 days, following his preliminary appearance. The problem with the application of CrR 3.3 in this case is created by the failure of the prosecution to give respondent a "preliminary appearance" as required by JCrR 2.03(a)(1) or the opportunity to immediately post bail. The difficulty exists "because the prosecutor did not use the procedure contemplated by the rules, *i.e.,* an appearance in justice court pursuant to JCrR 2.03 which would have triggered the time limits of CrR 3.3(b)." *State v. Elizondo,* 85 Wn.2d 935, 937, 540 P.2d 1370 (1975).

In *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976), a similar difficulty arose. Informations were filed in superior court but no warrant or summons was issued to bring the defendants before the court. When the defendants eventually were arraigned, the 90–day time limit provided in CrR 3.3(b) had run. The court noted, "the rules do

not authorize a period of delay between the filing of an indictment and the arrest or summons of the defendant, where he is amenable to process. If the rules are followed, the preliminary appearance will occur shortly after the indictment or information is filed, and a speedy trial will be afforded if the time is calculated from the date of the appearance." *Striker*, at 871–72.

The issue the court had to resolve in *Striker* concerned the applicable date from which to calculate the period in which the defendant must be brought to trial, when no preliminary appearance was held within a reasonable time after filing of the information. In *Striker*, we held at page 877:

> In order to protect the right of the accused, and in accordance with the manifest policy expressed in the rules, to discourage prosecutorial delays which are not approved by the court, we hold that in such circumstances a prosecution must be dismissed with prejudice on timely motion of the defendant, if it is not brought to trial within the time specified in CrR 3.3, after the information or indictment is filed. This holding is in harmony with the intent and spirit of the rules which are designed to afford a speedy trial.

Although the charge in *Striker* was by information rather than justice court complaint, we see no legal significance in this distinction. The legal effect on the defendant is the same and he is under charge in either event. The presence or absence of a warrant is likewise without significance as the prosecutor has the choice of whether or not to secure the warrant.

■ Application of the principles enunciated in *Striker* requires that the time provisions of CrR 3.3 and JCrR 2.03 run from the date the complaint and warrant are issued. Appellants failed to qualify within the methods of relief available from the running of the rule found in CrR 3.3(d), (e), and (f). Subsection (d) would exclude from the computation of time the period during which the defendant is facing federal charges. *State v. Young*, 89 Wn.2d 613, 574 P.2d 1171 (1978). However, even excluding that time

here—from January until May 1975—the outer limits of the time allowed under CrR 3.3 are still exceeded. Additionally, the prosecutor sought no relief under CrR 3.3(e), allowing for continuances if requested in a timely manner for good cause shown. Finally, under CrR 3.3(f) the speedy trial time limits applicable to a defendant who is "absent and thereby unavailable for trial" do not run until the defendant is actually present. However, unavailability as established under this rule can be shown only if the prosecution demonstrates good faith and diligent efforts to obtain the availability of the defendant. *State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976). We agree with that portion of *State v. Hattori,* 19 Wn. App. 74, 78–79, 573 P.2d 829 (1978), wherein the Court of Appeals states:

> [A] defendant cannot be considered "unavailable" for purposes of CrR 3.3(f) if his whereabouts are known and reasonable efforts are not taken to obtain his presence in the county wherein the charges are pending. If the State fails to exercise reasonable efforts in obtaining the defendant's presence, the time periods shall not "accrue anew" within the meaning of CrR 3.3(f). In determining whether the State has acted reasonably, the time necessary for transporting the defendant back to this state and administrative delays caused by the foreign jurisdiction, as well as whether the defendant waives extradition, are important factors to be considered.

There has been no showing of reasonable efforts here.

 ■ Appellant also points to the incarceration of the respondent in federal prison, and urges that this factor alters the application of CrR 3.3. Counsel for appellant cited, in oral argument, section 3.2 from the ABA Standards Relating to Speedy Trial (Approved Draft, 1968), which provides that time periods for prisoners incarcerated in other jurisdictions should run from the time that presence for trial has been obtained. Appellant correctly notes that we often look to these ABA standards to evaluate situations not within the coverage of CrR 3.3. *See State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Parmele,* 87 Wn.2d 139, 550 P.2d 536 (1976); *State v.*

*Elizondo,* 85 Wn.2d 935, 540 P.2d 1370 (1975). However, this is not an instance in which the rule fails to contemplate the situation before us. CrR 3.3 and its time limits apply uniformly to all persons held to answer for a crime. This includes persons incarcerated elsewhere as well as those who are not. The exceptions in the rule provide all necessary relief from the time limits if a defendant is on trial elsewhere or unavailable through lack of cooperation or delayed cooperation of another jurisdiction. This situation is not one which the rule fails to address; CrR 3.3 and our prior interpretations of it require dismissal of the charge originally filed in January 1975 and refiled 2 years later. The ABA standards are not applicable here because our own rule as interpreted by this court is itself complete on the instant issue.

## II

Appellant urges that this court in *State v. Striker, supra,* relegated CrR 3.3 to a subsidiary role if there is a statute which speaks to the identical subject. RCW 9.100 is argued to be in conflict with CrR 3.3 and to therefore control. This misconceives our holding in *Striker.* We there stated:

> Unless there is a statute which controls the disposition of the question presented (*see State v. Cummings,* 87 Wn.2d 612, 555 P.2d 835 (1976)), a due regard for the protection of the petitioners' constitutional rights, as well as considerations of policy in the administration of justice, compel us to the conclusion that where, contrary to the expectation expressed in the rules, a delay has occurred between the filing of the information and the bringing of the accused before the court, CrR 3.3 must be deemed to operate from the time the information is filed.

*State v. Striker, supra* at 875.

We then went on to recognize that RCW 10.46.010 covered the same subject matter as our rule but that the two treated the subject matter differently, and held that "the two are in conflict and the statute is superseded." *Striker,* at 875. This result is, of course, required by CrR 1.1 and RCW 2.04.200.

■ There is, in any event, no conflict between the statute and rule. RCW 9.100 is entitled "Agreement on Detainers" and establishes a statutory scheme whereby this state and the fellow states and United States government who are signatories to the agreement, provide a process for resolution of charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trials of persons already incarcerated in other jurisdictions. Article 3(a) of that act provides that when a person is incarcerated in a penal institution of a party to the agreement and there is pending in any other party state member, untried charges for which a detainer has been lodged against the prisoner, he "shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment . . ."

Article 4 in turn authorizes the appropriate officer of the jurisdiction in which an untried indictment information or complaint is pending to have a prisoner, against whom he has lodged a detainer and who is serving a term of imprisonment in any party state, made available on presentation of a written request for temporary custody of the prisoner. The appropriate authorities are allowed 30 days after receipt before the request is honored during which time the governor of the sending state may disapprove the request, and it is further provided that for those proceedings trials shall be commenced within 120 days after the arrival of the prisoner in the receiving state.

RCW 9.100 sets standards for cooperation among the states. It does provide for time limits within which charges must be prosecuted or they will be dropped but it is not, strictly speaking, a speedy trial provision. CrR 3.3 on the other hand is applicable to all criminal trials within Washington state and demands defendants be tried within a fixed period of time less excluded periods set forth

therein. If, after demonstrating reasonable diligence, a prosecutor is unable to secure presence of a defendant, the prosecutor may obtain relief under CrR 3.3(f). We view RCW 9.100 as a statute which will assist prosecuting authorities to obtain the presence of a defendant held in facilities over which they have no control in other cooperating jurisdictions. It does not, however, relieve prosecutors from the obligation to comply with CrR 3.3 time limits and they must use all reasonable diligence to obtain the presence of the defendant within those time limits. If, however, the request has been made for the defendant's presence as soon as reasonably practicable and the cooperating jurisdiction delays unreasonably in delivering the defendant, he would be "unavailable" within the meaning of CrR 3.3(f). The time under CrR 3.3 would then begin to run again only upon actual presence of the defendant and, practically speaking, the prosecutor often would be subject only to the time limitations contained in RCW 9.100.

### III

The new assault charge filed in 1977 was also properly dismissed by the trial court. The judge determined that, because the new charge arose out of the same offense and incident as the old one, the time limits of CrR 3.3 began running on the new offense as well as the old one in January 1975. CrR 3.3 does not expressly so provide. However, because we find therein no provisions which contemplate separate charges from the same conduct filed years apart, we look to ABA standards to provide supplemental interpretation. Standard 2.2 recommends that the time within which trial must be held should begin on all crimes "based on the same conduct or arising from the same criminal incident" from the time the defendant is held to answer any charge with respect to that conduct or episode. CrR 4.3(c), particularly subsection (3), appears supportive of the ABA standard here, as it expresses a preference for a single disposition of all charges arising from one incident. We apply that standard here.

432

The trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.