[No. 3088-2. Division Two. December 1, 1978.]

THE STATE OF WASHINGTON, *Appellant,* v. STANLEY RICHARD ERICKSON, *Respondent.*

*James E. Carty, Prosecuting Attorney,* and *Arthur D. Curtis, Deputy,* for appellant.

*Donald A. Greig* of *Clark County Legal Defender,* for respondent.

REED, J.—The Clark County Superior Court dismissed a criminal charge with prejudice because the defendant was not afforded a "speedy trial" pursuant to CrR 3.3.[1] The State appeals and we affirm.

On May 11, 1977, defendant Stanley Richard Erickson was arrested for second–degree burglary and reckless driving after a high–speed chase in rural Clark County. During an impound–inventory search of his vehicle, a .25 caliber pistol was found in the glove compartment. Defendant was carrying a fully loaded ammunition clip in his coat pocket.

Preparatory to his first court appearance, defendant disclosed to a pretrial release interviewer that he had the following previous convictions: (1) first–degree burglary (Montana 1959); (2) armed robbery (Montana 1961); (3) first–degree burglary (Oregon 1971); and (4) "bad checks" (Montana 1960). Defendant further stated he had served in excess of 11 years in prison because of these convictions. The release on own recognizance (ROR) form, recording this information, was furnished to the prosecuting attorney prior to defendant's appearance on May 12. On May 13 defendant entered a plea of not guilty to second–degree burglary and second–degree theft charges. Apparently defendant had been unable to secure his release on these charges when, on June 6, Oregon authorities lodged a parole suspension hold with Clark County.[2]

On July 15, 1977, defendant, having remained in continuous custody for 65 days, moved to dismiss the Clark County charges. On that date the deputy prosecuting attorney orally moved for dismissal with prejudice, citing the pendency of the Oregon proceedings and representing to

---

[1]CrR 3.3 requires a dismissal with prejudice if a defendant, unable to secure his release from custody, is not brought to trial within 60 days and within 90 days otherwise.

[2]From the record it is not clear whether defendant could have obtained a release on the Clark County charges had it not been for the Oregon detainer. The State has stipulated, however, that defendant remained in the custody of Clark County "May 11, 1977 to July 15, 1977 due to the defendant's arrest and prosecution in Clark County Superior Court."

the court that a dismissal of the burglary and theft charges would "be in the best interests of the defendant and society." According to defense counsel, the Clark County Legal Defender Services, the deputy prosecutor requested that he be permitted to move the dismissal "as it would look 'bad' if it became public knowledge that the case was dismissed because of failure to afford Mr. Erickson his right to a speedy trial." On July 18 defendant was served with a fugitive warrant based upon the Oregon parole violation charges. On July 22 defendant secured his release on bond pending extradition proceedings by Oregon.

The proceedings leading to this appeal were initiated on August 4, 1977, when the State charged defendant with a violation on May 11, 1977, of RCW 9.41.040, which prohibits possession of a pistol by a person who has been convicted of a violent crime. The trial court dismissed the charges, finding

> that the prosecuting attorney's office had sufficient knowledge of all essential elements of the crime . . . more than 60 days prior to the filing of this information. [And that] Possession of a firearm by a burglary suspect is sufficiently related to the burglary to require that [defendant] would be considered "held to answer" under the interpretations of CrR 3.3 by the courts.

This appeal followed.

CrR 3.3 does not directly address the question of when the "speedy trial" clock starts to run if the State files a new charge or charges against a defendant already "held to answer" for another crime. The issue has been addressed by the courts of this state, however. In *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978), the defendant fired shots at two police officers during a shoot–out after an armed robbery. Defendant was first charged with robbery and assault on one victim but was not brought to trial for approximately 2 years, having been surrendered to federal officials and then incarcerated in McNeil Island Federal Penitentiary. After defendant made a formal request for dismissal under the agreement on detainers act, RCW 9.100, the

State filed a new information charging essentially the same assault encompassed by the original charge and adding a count connected with the same shoot–out, but related to another victim. After noting that it has previously looked to the ABA Standards for guidance when confronted with a hiatus in CrR 3.3, *e.g.*, *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Parmele*, 87 Wn.2d 139, 550 P.2d 536 (1976); *State v. Elizondo*, 85 Wn.2d 935, 540 P.2d 1370 (1975), the *Peterson* court elected to apply section 2.2 of the ABA Standards Relating to Speedy Trial (Approved Draft, 1968) and affirmed the trial court's dismissal of the belated charges. ABA Standards Relating to Speedy Trial, *supra*, section 2.2 reads as follows:

> When time commences to run.
> The time for trial should commence running, without demand by the defendant, as follows:
> (a) from the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the same crime or a *crime based on the same conduct or arising from the same criminal episode,* then the time for trial should commence running from the date he was held to answer;

(Italics ours.)

In *State v. McNeil,* 20 Wn. App. 527, 582 P.2d 524 (1978), the administrator of the Garfield County Hospital was charged with four counts of embezzling hospital funds, RCW 9.54.010. These charges were dismissed for failure to comply with CrR 3.3. Thereafter, audits were conducted covering a portion of the same time frame involved in the embezzlement charges. These audit results prompted the State to file four new charges of account falsification by a public official, RCW 42.20.070. After observing that both CrR 4.3—relating to joinder and the failure to join "related offenses"—and CrR 3.3 are designed in part to deter "successive prosecutions based upon essentially the same conduct," the *McNeil* court fastens upon ABA Standards Relating to Speedy Trial, *supra*, § 4.1 to uphold dismissal

of the falsification charges. *State v. McNeil, supra* at 532. Section 4.1 reads as follows:

> If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the consequence should be absolute discharge. Such discharge should forever bar prosecution for the offense charged *and for any other offense required to be joined with that offense.*

(Italics ours.) The court also cited the comment to the italicized portion of § 4.1, which reads:

> The provision that discharge should bar prosecution for "any other offense required to be joined with that offense" incorporates by reference standards as to required joinder.

(Footnote omitted.) The *McNeil* court did not mention ABA Standards Relating to Speedy Trial, *supra,* § 2.2.

When applied to the factual situations of *Peterson* and *McNeil,* the ABA Standards provide a ready solution. Both the firing upon separate individuals during a running gun fight and the making of a series of bookkeeping entries within a given time frame clearly qualify as acts arising from the same conduct or episode. The connection between the pistol found in Erickson's vehicle and the burglary is not so obvious. The State apparently drew no such connection because it did not charge defendant with possession or use of the pistol in the commission of the burglary. Nor did the State attempt to use defendant's possession of the weapon to elevate the crime to burglary in the first degree, RCW 9A.52.020, or to trigger the enhanced penalty provisions of either RCW 9.41.025 (firearm), or RCW 9.95.040 (deadly weapon).

On the other hand, defendant was apprehended only moments after the burglary had occurred and as the result of a hot pursuit from the scene. When arrested he was carrying a loaded clip of ammunition for the weapon. It is fair to infer that defendant had carried the gun with him into the dwelling and that he had been able to thrust it into the glove box during the chase. Furthermore, if the State had

elected to join in one information a count for illegal possession of the weapon with separate counts for the burglary and theft, such joinder would clearly have survived a motion to sever, CrR 4.3(a)(2).[3] Because Erickson's possession of the pistol bore an intimate relationship or was intimately connected or related to the burglary theft, we hold it arose out of the same criminal conduct or episode. Thus, the speedy trial time frame for prosecution and trial of the weapons charge was the same as that for the burglary charge.

The State contends that the rule should not be strictly applied in Erickson's case, however, because the State lacked definite proof of his guilt until it received certified copies of his out–of–state convictions so that the prosecutor could be sure they were constitutionally obtained and were for "violent crimes." Further, the State argues it would have been improper to charge Erickson solely on the basis of his ROR admissions.

██ These arguments have some persuasive force in this case because, in order to convict on the weapons charge, proof was needed of some fact or facts extrinsic to the physical conduct or activity constituting the principal crime of burglary. We agree with the State's proposition that the speedy trial clock should not be activated on an ancillary or related offense of this category until the State has probable cause to charge. On the other hand, probable cause to charge may be present even though the prosecution does not yet possess sufficient admissible evidence to prove its case beyond a reasonable doubt. In such cases the charge should be filed; if, when the trial date becomes

---

[3]CrR 4.3(a)(2) reads as follows:

"(a) Joinder of Offenses. Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

". . .

"(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan;"

imminent, the State has been unable to secure the necessary evidence to convict, it may seek an extension of time pursuant to CrR 3.3(e)(2)(ii).[4] In short, if the State does not charge a defendant with all related offenses arising out of the same criminal conduct or episode as soon as it has probable cause to do so it runs the risk of a dismissal for failure to provide a speedy trial.

■ This interpretation of CrR 3.3 is consistent with the provisions of CrR 4.3(c)(2) and (3),[5] which pertain to the consequences of the State's failure to join "related offenses" and also permit the trial court to consider the actual state of the prosecution's evidence in passing upon a motion to dismiss. The State can take no comfort in this interpretation of CrR 3.3 in the instant case, however, because the

---

[4]CrR 3.3(e)(2)(ii) reads as follows:

"**(e) Continuances.** Continuances or other delays may be granted as follows:

". . .

"(2) On motion of the prosecuting attorney if:

". . .

"(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; . . ."

[5]CrR 4.3(c)(2) and (3) provide:

"**(c) Failure to Join Related Offenses.**

". . .

"(2) When a defendant has been charged with two or more related offenses, his timely motion to join them for trial should be granted unless the court determines that *because the prosecuting attorney does not have sufficient evidence* to warrant trying some of the offenses at that time, or for some other reason, the ends of justice would be defeated if the motion were granted. A defendant's failure to so move constitutes a waiver of any right of joinder as to related offenses with which the defendant knew he was charged.

"(3) A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for joinder of these offenses was previously denied or the right of joinder was waived as provided in section (b). The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that *because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence* to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted." (Italics ours.)

prosecuting attorney was made aware of defendant's previous convictions before defendant's first court appearance. Any doubts the prosecuting attorney may have harbored about the truth of defendant's revelations—admissions against interest—the nature of his previous offenses or the constitutionality of his convictions could have been resolved within a matter of days. We cannot accept the State's contention that ethical considerations require it to await the actual receipt of "hard evidence" of all the elements of an offense before it is justified in filing a charge. Our holding in this regard is consistent with the commentary to section 3.7 ABA Standards Relating to the Prosecution Function and The Defense Function (Approved Draft, 1971), which reads:

> The prosecutor should base his decision whether to file an information *on his knowledge of the availability of evidence* which will be admissible at trial and which is sufficient to establish a case against the accused.

(Italics ours.)

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.