[No. 63346-1.  En Banc.]
Argued May 30, 1996.     Decided August 29, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS
MATTHEW HARRIS, *Petitioner*.

*Darby N. DuComb* of *Washington Appellate Project*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Robin E. Fox* and *Jennifer Gilman, Deputies*, for respondent.

DOLLIVER, J. — Five months after pleading guilty to the

charge of driving with no valid operator's license (NVOL), Defendant Thomas Harris was charged and found guilty of taking a motor vehicle without permission (TMV). Both charges arose from the same traffic stop. Defendant claims the State violated the speedy trial rule, JuCR 7.8, by bringing the TMV charge five months after the NVOL charge. The Court of Appeals upheld Defendant's TMV conviction. We reverse and order the dismissal of the TMV charge.

On November 26, 1993, just after midnight, a police officer pulled over a Datsun pickup truck for driving without headlights. The officer ran a computer check on the vehicle and discovered the truck was reported as stolen. The officer arrested Defendant, who was driving, and two passengers. Defendant was 17 years old at the time of arrest, and he did not have a driver's license. The officer cited Defendant for driving without a valid operator's license, in violation of RCW 46.20.021 (a misdemeanor). The officer also filled out a citation form for taking a motor vehicle without the owner's permission, in violation of RCW 9A.56.070 (a felony). Citations cannot be issued for felony charges, but the officer apparently recognized this because the officer wrote "Investigation" on the line where the defendant's signature would normally be required on the form.

Police contacted the Datsun owner, who came to the scene of the arrest and retrieved the vehicle. The truck had been "hot wired," and the owner reported a toolbox was missing from the vehicle. After being advised of his rights, Defendant voluntarily signed a statement in which he admitted he obtained the truck from an acquaintance, and he knew it had been stolen. Defendant was released into his mother's custody.

On December 8, 1993, a King County deputy prosecutor filed a formal complaint in Shoreline District Court for the NVOL charge. On December 22, 1993, Defendant appeared pro se and pleaded guilty.

On May 10, 1994, 139 days after Defendant pleaded guilty to the NVOL, a King County deputy prosecutor filed an information in King County Superior Court, Juvenile Division, charging Defendant with the TMV. Defendant appeared in court for arraignment on May 31, 1994, 160 days after his guilty plea on the NVOL. Claiming his JuCR 7.8 right to a speedy trial had been violated, Defendant moved to dismiss the TMV charge. He asserted the speedy trial clock on the TMV charge began running when he was held to answer for the NVOL, since both charges arose from the same criminal conduct or episode.

The trial court held a pretrial motion hearing on July 14, 1994, at which the court considered and denied Defendant's motion to dismiss. The court noted that the police report had sat untouched in the prosecutor's office "in box" for two different three-week periods. The court expressed concerns over the State's lengthy delay in bringing the TMV charge, but the court held the situation did not present a speedy trial issue, and it held the delay did not amount to a constitutional deprivation of due process.

On July 21, 1994, Defendant stipulated to the facts contained in the police report and was found guilty on the TMV charge. Defendant appealed the conviction, arguing the TMV charge was filed in violation of JuCR 7.8, and the charge should have been dismissed with prejudice. In an unpublished opinion, the Court of Appeals cited *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989) and held the speedy trial rule did not apply to Defendant's situation. *State v. Harris*, No. 35205-9-I (Wn. App. July 31, 1995). The court found Defendant's Sixth Amendment rights under the federal constitution were not violated, so the court upheld Defendant's conviction.

This court granted Defendant's petition for review, *State v. Harris*, 128 Wn.2d 1013 (1996). Defendant challenges the lower court's holding on the speedy trial rule, but Defendant does not dispute the Court of Appeals' Sixth Amendment analysis, so our review is limited to the question of whether or not the TMV conviction violated JuCR 7.8. RAP 13.7(b).

The juvenile court speedy trial rule states, in part:

> The adjudicatory hearing on a juvenile offense shall begin within 60 days following the juvenile's arraignment in juvenile court on the charges contained in the information.

JuCR 7.8(b). Defendant argues that, where two charges arise from the same criminal act or criminal episode, as did his NVOL and TMV, the speedy trial clock for the second criminal charge starts running when the Defendant is arraigned on the first charge. Defendant claims his December 22, 1993, arraignment for the NVOL charge started the clock running for the TMV charge. Accordingly, the trial for the TMV charge had to start within 60 days from December 22, 1993.

JuCR 7.8 does not expressly address situations involving multiple charges that stem from the same criminal conduct or criminal episode. Defendant is correct, however, when he claims *State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978), supports his reading of JuCR 7.8.

In 1975, Peterson was charged in district court with assault for shooting at police officers when fleeing from a bank robbery. Peterson was tried and convicted on federal bank robbery charges, but the State failed to prosecute the assault charge. While in the federal penitentiary, Peterson successfully moved to dismiss the assault charge under the Interstate Agreement on Detainers Act, RCW 9.100. In 1977, the State filed two new assault charges against Peterson in superior court, with both charges stemming from the same shooting incident. One charge was identical to the previously dismissed 1975 charge, and the other assault charge merely named a different police officer as the victim. This court dismissed the second charge for violation of the speedy trial rule:

> The new assault charge filed in 1977 was also properly dismissed by the trial court. The judge determined that, because the new charge arose out of the same offense and incident as the old one, the time limits of CrR 3.3 began running on the new offense as well as the old one in January

1975. CrR 3.3 does not expressly so provide. However, because we find therein no provisions which contemplate separate charges from the same conduct filed years apart, we look to ABA standards to provide supplemental interpretation. *Standard 2.2 recommends that the time within which trial must be held should begin on all crimes "based on the same conduct or arising from the same criminal incident" from the time the defendant is held to answer any charge with respect to that conduct or episode.* CrR 4.3(c), particularly subsection (3), appears supportive of the ABA standard here, as it expresses a preference for a single disposition of all charges arising from one incident. We apply that standard here.

*Peterson*, 90 Wn.2d at 431 (emphasis added) (quoting ABA STANDARDS RELATING TO SPEEDY TRIAL STD. 2.2 (Approved Draft 1968)). The ABA standard cited in *Peterson* currently exists as 2 AMERICAN BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE STD. 12-2.2 (2d ed. 1980).

The ABA standard adopted by *Peterson* has been cited as controlling law in many subsequent cases. *See, e.g., State v. Fladebo*, 113 Wn.2d 388, 392, 779 P.2d 707 (1989); *State v. Anderson*, 94 Wn.2d 176, 183, 616 P.2d 612 (1980); *State v. Austin*, 59 Wn. App. 186, 201, 796 P.2d 746 (1990); *State v. Bradley*, 38 Wn. App. 597, 599, 687 P.2d 856, *review denied*, 102 Wn.2d 1024 (1984). Even though the ABA standard adopted in *Peterson* cannot be found in CrR 3.3, standard 12-2.2 has been incorporated into the rules through *Peterson's* adoption of the standard and *Fladebo's* continued adherence to it. CrR 1.1 ("These rules . . . shall be interpreted *and supplemented* in light of the common law and the decisional law of this state." (emphasis added)); *see also State v. Greenwood*, 120 Wn.2d 585, 595, 845 P.2d 971 (1993).

The juvenile court speedy trial rule is to be read in conjunction with the superior court rules where consistent. JuCR 1.4(b) ("The Superior Court Criminal Rules shall apply in juvenile offense proceedings when not inconsistent with these rules and applicable statutes."); *State v. Mack*, 89 Wn.2d 788, 792-93, 576 P.2d 44 (1978); *State v.*

*Wilcox*, 71 Wn. App. 116, 118, 856 P.2d 1104 (1993). Under JuCR 1.4(b), the ABA standard adopted by *Peterson* in the context of CrR 3.3 equally applies to JuCR 7.8.

In its supplemental brief, the State wisely concedes the NVOL and TMV arose from the same criminal conduct. Accordingly, under the *Peterson* rule, the State had to bring Defendant to trial on the TMV charge within 60 days after Defendant was held to answer on the NVOL charge. The speedy trial period for the TMV expired on February 21, 1994. The TMV charge was filed on May 10, 1994, 139 days after Defendant appeared in district court on the NVOL charge, and long after the speedy trial period expired.

The Court of Appeals declined to apply the *Peterson* rule to Defendant's situation, basing its reasoning on language in *State v. Fladebo*, 113 Wn.2d 388, 779 P.2d 707 (1989). The court held *Peterson* does not apply in situations where multiple but related criminal charges are filed in different courts. *State v. Harris*, No. 35205-9-I, slip op. at 9 (Wn. App. July 31, 1995). *Fladebo* does not support the Court of Appeals' holding in this case.

In *Fladebo* the defendant was involved in a car accident, and she appeared to be under the influence of drugs at the scene. An officer arrested her and gave her a municipal court citation for driving while under the influence (DWI), in violation of the local municipal code. The officer also found in the defendant's purse a drug kit containing four hypodermic needles, a spoon, and some cotton covered with brown residue. These items were sent to a crime laboratory for testing. *Fladebo*, 113 Wn.2d at 390.

On October 27, 1986, Fladebo was arraigned in the local municipal court on the DWI charge. On December 2, 1986, the county prosecutor received the crime lab report indicating that the substance in Fladebo's purse was heroin. Some time later, on February 17, 1987, the prosecutor finally charged defendant in superior court with felony possession of heroin. She moved to dismiss this second charge for violation of the speedy trial rule. Her motion

was denied and she was found guilty. *Fladebo*, 113 Wn.2d at 391.

*Fladebo* acknowledged the *Peterson* rule, but the court held the standard did not apply to the facts because the two different charges arose from "different jurisdictions with separate prosecutorial responsibilities." *Fladebo*, 113 Wn.2d at 392. Fladebo's DWI charge was heard in municipal court, and the municipal court had exclusive jurisdiction over that charge. RCW 3.46.030 ("A municipal department shall have exclusive jurisdiction of matters arising from ordinances of the city . . . ."). The illegal possession charge was heard in superior court where it was prosecuted by the county prosecutor on behalf of the state.

The facts in this case are distinguishable from the facts of *Fladebo*. Defendant's two charges were prosecuted by the same prosecutorial authority, the King County Prosecuting Attorney, and both charges were brought in state courts. Even though the NVOL was filed in district court and the TMV was filed in superior court, the superior court has jurisdiction over both charges. *See* RCW 2.08.010 (superior court has original jurisdiction over all felonies and all misdemeanors not otherwise provided for by law); RCW 3.66.060 (district court has concurrent jurisdiction with superior court over all misdemeanors).

*Fladebo* did not signal a relaxation of the *Peterson* rule, as suggested by *State v. Wilton*, 57 Wn. App. 606, 608, 789 P.2d 800, *review denied*, 115 Wn.2d 1005 (1990); rather, *Fladebo* merely indicates the *Peterson* rule does not apply to situations where multiple charges are brought in different courts with exclusive jurisdictions, and the charges are prosecuted by different prosecutorial authorities. Since the two charges filed against Defendant were prosecuted by the same authority, and the superior court had original jurisdiction over both charges, we hold the *Peterson* rule, embodying ABA standard 12-2.2, applies to this case.

*Fladebo* did not purport to overturn or limit prior case law involving the *Peterson* rule, and prior case law supports our application of the rule to the facts of this case.

Before *Fladebo* was decided, courts consistently applied the *Peterson* rule to multiple charges, *even when the charges were split between district and superior courts. See State v. Peterson*, 90 Wn.2d 423, 585 P.2d 66 (1978); *State v. Bradley*, 38 Wn. App. 597, 599, 687 P.2d 856 (remanding for computation of the speedy trial time under the *Peterson* rule), *review denied*, 102 Wn.2d 1024 (1984); *State v. Wilke*, 28 Wn. App. 590, 594, 624 P.2d 1176, *review denied*, 95 Wn.2d 1026 (1981).

The purpose of JuCR 7.8 "is to ensure prompt resolution of juvenile offense proceedings, which in turn promotes rehabilitation of the juvenile offender." *State v. Wilcox*, 71 Wn. App. 116, 119, 856 P.2d 1104 (1993). *See also State v. Adamski*, 111 Wn.2d 574, 761 P.2d 621 (1988). "While the specific rights conferred by the rule are not of constitutional magnitude, the rule emanates from state and federal constitutional guaranties." *Adamski*, 111 Wn.2d at 582 (citations and footnote omitted). Court rules should be construed to foster the purposes for which they were enacted. *State v. Greenwood*, 120 Wn.2d 585, 593, 845 P.2d 971 (1993). Unless the speedy trial rule is strictly applied, "the right to a speedy trial as well as the integrity of the judicial process, cannot be effectively preserved." *State v. Striker*, 87 Wn.2d 870, 877, 557 P.2d 847 (1976). "This court has consistently interpreted CrR 3.3 so as to resolve ambiguities in a manner which supports the purpose of the rule in providing a *prompt* trial for the defendant once prosecution is initiated." *State v. Edwards*, 94 Wn.2d 208, 216, 616 P.2d 620 (1980) (citations omitted).

Applying the *Peterson* rule to this case serves the purpose of the speedy trial rule. The policy behind the *Peterson* rule is similar to the policy behind mandatory joinder. *Peterson*, 90 Wn.2d at 431; *State v. McNeil*, 20 Wn. App. 527, 532, 582 P.2d 524 (1978). Joinder principles are designed to protect defendants from

"successive prosecutions based upon essentially the same conduct, whether the purpose in so doing is to hedge against the risk of an unsympathetic jury at the first trial, to place a

'hold' upon a person after he has been sentenced to imprisonment, or simply to harass by multiplicity of trials."

*McNeil*, 20 Wn. App. at 532 (footnote omitted) (quoting Commentary to ABA STANDARDS RELATING TO JOINDER AND SEVERANCE § 1.3, at 19 (Approved Draft 1968)). The *Peterson* rule prevents prosecutors from harassing a defendant by bringing successive charges over a long span of time even though all charges stem from the same criminal episode. When multiple charges stem from the same criminal conduct or criminal episode, the State must prosecute all related charges within the speedy trial time limits. This ensures a prompt resolution of all criminal matters that stem from one episode. If the State needs extra time to complete an investigation, the speedy trial rule allows for continuances in such circumstances. *See* JuCR 7.8(e)(2)(ii).

Defendant was held to answer for his NVOL on December 22, 1993. He began to serve out the conditions of his sentence and work toward rehabilitation. The 60-day juvenile court speedy trial limit ran out on February 21, 1994. Then, 78 days later, the State charged Defendant with the TMV. Defendant was found guilty on the TMV charge on July 21, 1994 — 150 days *after* the speedy trial period expired and 237 days after Defendant was first arrested. The late TMV charge blatantly violates the spirit of the speedy trial rule.

Defendant's TMV conviction must be dismissed unless one of two conditions are met. First, Defendant's speedy trial right can be waived by his failing to timely object to a late trial date. It must be ascertained if Defendant objected to the TMV charge in a timely fashion. Second, we must determine whether the State has satisfied any provision in the speedy trial rule allowing for the delayed charge.

Both CrR 3.3 and JuCR 7.8 place responsibility on the court to insure each person charged with a crime is given a speedy trial pursuant to the rules; but both rules also

contain provisions requiring defendants to make timely objections to hearing or trial dates. CrR 3.3(e), (f); JuCR 7.8(c). Timely objections are required so that, if possible, the trial court will have an opportunity to fix the error and still satisfy the speedy trial requirements. *State v. Greenwood*, 120 Wn.2d 585, 606, 845 P.2d 971 (1993). If a defendant does not timely raise the objection, then the defendant's speedy trial rights under the court rules are deemed waived. CrR 3.3(e), (f); JuCR 7.8(c).

■ Defendant moved to dismiss the TMV charge the first time he appeared in court, which was during his arraignment on May 31, 1994. At that point, the speedy trial deadline had already expired at no fault of Defendant. Obviously, Defendant could not raise a speedy trial objection prior to the State's filing of the second charge in May. Since Defendant could not have raised the speedy trial objection any earlier, he "cannot be deemed to have waived his . . . objection." *Greenwood*, 120 Wn.2d at 606. His objection was timely, so his speedy trial rights were not waived.

■ The second question is whether or not the State satisfied any of the exceptions to the speedy trial rule. The speedy trial rule lists certain circumstances where a court may grant a continuance or delay, which period would be excluded in computing the deadline under the rule. JuCR 7.8(d), (e). A court may allow a continuance, if requested by the prosecutor, and

> the State's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time[.]

JuCR 7.8(e)(2)(ii). In this kind of situation, where the second charge is filed beyond the speedy trial deadline, the court would have to grant a retroactive continuance if the late-filed charge is to be upheld. Allowing a retroactive continuance does not violate the spirit of the speedy trial rule, so long as the State can satisfy the rule's

requirements for obtaining a continuance and the defendant is not prejudiced by the minor delay. *See State v. Carson*, 128 Wn.2d 805, 817, 912 P.2d 1016 (1996).

During the pretrial hearing on Defendant's motion to dismiss, the State explained the TMV charge was delayed because it needed a victim statement from the owner of the stolen vehicle to prove that a vehicle theft did, in fact, occur; and the State also needed to determine in which county the traffic stop occurred. These excuses do not justify a 150-day continuance (150 days being the length of time between the expiration of the speedy trial period, February 21, 1994, and July 21, 1994, when Defendant was actually tried and found guilty on the TMV charge).

The prosecutor's office received the police officer's incident report on Defendant's arrest and the officer's stolen vehicle recovery report. The incident report included a copy of the citation form submitted by the police officer, and the citation explicitly notes at the top of the page that the traffic stop occurred in King County. Even if the report did not disclose the county in which the crime occurred, it would take only a telephone call to the reporting officer to verify the location of the traffic stop.

The need to obtain a victim statement to confirm the vehicle had been stolen also fails to justify a 150-day continuance. The incident report and the recovery report both clearly show the vehicle had been stolen. The "Report of Investigation" lists the vehicle owner's name, address, and telephone number; it describes the vehicle that was reported stolen; it says when the vehicle was reported stolen; and finally, it even has a checked-off box where the owner apparently indicated the desire for charges to be filed. The "Motor Vehicle Recovery Report" says the victim was called and came to the scene of Defendant's arrest to retrieve the stolen vehicle. The report says the vehicle had been "hot wired." Additionally, Defendant had signed a written statement at the scene of arrest in which he admitted knowingly driving a stolen vehicle. The State clearly had probable cause and sufficient evidence to file

the TMV charge soon after the November 1993 arrest. From the record it appears Defendant's TMV conviction was based *solely* on the information contained in the police reports — information which the State possessed in December 1993. Even if a written statement was needed from the vehicle owner, the police reports contained the necessary information to locate and contact the owner to obtain the statement. This should not have taken 150 days.

■ As stated in *State v. Erickson*, 22 Wn. App. 38, 587 P.2d 613 (1978), the State must act diligently in circumstances where two or more charges arise from the same criminal conduct or criminal episode. If the state has already filed and/or prosecuted one of those charges, and there is probable cause to bring the second charge,

> the [second] charge should be filed; if, when the trial date becomes imminent, the State has been unable to secure the necessary evidence to convict, it may seek an extension of time pursuant to CrR 3.3(e)(2)(ii). *In short, if the State does not charge a defendant with all related offenses arising out of the same criminal conduct or episode as soon as it has probable cause to do so it runs the risk of a dismissal for failure to provide a speedy trial.*

*Erickson*, 22 Wn. App. at 44-45 (footnote omitted; emphasis added).

Once the State prosecuted Defendant in December 1993 on the NVOL charge, it should have filed and tried the TMV charge by February 21, 1994. If it had filed the charge in a timely fashion, and then discovered that additional information was needed, it could have applied for a continuance. Instead, the State delayed filing the TMV until far beyond the expiration of the speedy trial deadline. The State's reasons for the lengthy delay do not meet the standard of "due diligence" as required to obtain a continuance under JuCR 7.8(e)(2)(ii).

The Court of Appeals is reversed, and Defendant's TMV conviction is dismissed.

48

DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.