[No. 15495-5-III.   Division Three.   May 13, 1997.]

THE STATE OF WASHINGTON, *Appellant*, v. BRION
THOMAS DUFFY, *Respondent*.

336

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for appellant.

*Frank V. Bartoletta* and *Sanger & Bartoletta*, for respondent.

KURTZ, J. — After a police officer stopped his squad car

to investigate what he believed to be a domestic violence situation involving Brion and Kim Duffy, Mr. Duffy drove off with the officer in pursuit and eventually collided with another vehicle. Mr. Duffy was apprehended and booked into jail on charges of eluding an officer, and driving while intoxicated (DWI). The city attorney subsequently decided not to prosecute and referred the matter to the county prosecutor. Charges of attempting to elude, DWI, and hit-and-run attended were filed in superior court. Mr. Duffy's motion to dismiss these charges was granted. The State appeals, contending the court erred in dismissing the DWI and hit-and-run charges based on a violation of speedy trial rights and in dismissing the eluding charge based on a finding of no probable cause for the initial stop. We affirm the dismissal of the hit-and-run attended and driving while intoxicated charges and reverse the dismissal of the charge of attempting to elude.

## FACTS

On April 9, 1995, Officer Brian Hamond of the Spokane Police Department was on duty, in uniform, and driving a marked squad car. At approximately 2:22 a.m. he was responding to an accident report when he noticed two cars stopped on the east side of Lincoln Street south of First Avenue. Mr. Duffy was standing at the open door of the rear car talking to a woman in the driver's seat. Officer Hamond stopped in the middle of the road and rolled down his window to investigate. As he rolled down his window, he thought he heard arguing or "angry voices" coming from the car. When Officer Hamond asked if anything was wrong, Mr. Duffy told him everything was fine and they had a minor accident. Mr. Duffy also identified the other driver as his wife.

Officer Hamond testified Mr. Duffy stood between him and the driver of the other car and Mr. Duffy would not step aside to let Officer Hamond see the driver. Unable to see the driver and concerned this might be a domestic incident, Officer Hamond then turned on his safety flash-

ers and backed up behind the two vehicles. Ms. Duffy subsequently testified there had been no accident, Officer Hamond had been able to see her face, and that she had told him that everything was fine.

As Officer Hamond was moving his squad car, Mr. Duffy drove off in his car and the second car started to follow. The officer drove up ahead of the two vehicles and placed his car diagonally across First Avenue. Mr. Duffy then drove around the squad car and accelerated away at a high rate of speed. Officer Hamond activated his siren and pursued. Officer Hamond saw Mr. Duffy's vehicle cut off and collide with another vehicle that was being driven on First Avenue. The officer continued to pursue Mr. Duffy north on Wall Street at a high rate of speed. On Wall Street past Sprague Avenue, Mr. Duffy drove between two portable barriers placed to stop traffic in a construction zone and had to stop because of heavy equipment parked on Wall Street at Riverside Avenue. Mr. Duffy was apprehended after a chase on foot.

Mr. Duffy was booked into the jail on charges of eluding an officer and was also given a citation charging him with DWI in the Spokane municipal court. He did not sign the citation. On April 11, Mr. Duffy's attorney filed a written appearance in the municipal court and waived arraignment. Mr. Duffy was given an arraignment date of April 24. The city attorney decided not to prosecute the DWI charge and referred the matter to the county prosecutor. A letter was sent to Mr. Duffy and to his attorney notifying them the city "declined to prosecute," the April 24 court date was cancelled, and the case had been referred to the county prosecutor.

The municipal court file indicates the case was filed April 10 and closed April 20. The case was referred to the county prosecutor on August 9. Charges of attempting to elude, DWI and hit-and-run attended were filed in superior court on August 21. Mr. Duffy filed motions to dismiss all three charges on the basis of the speedy trial rule and to dismiss the eluding charge for lack of probable cause to stop.

The court dismissed the DWI charge and the hit-and-run charge, finding that no order of dismissal had been entered in municipal court and that these misdemeanors should be dismissed for violation of Mr. Duffy's right to a speedy trial. The felony charge of eluding was not dismissed under the speedy trial rationale as the court concluded that the municipal court did not have jurisdiction over this charge. A hearing was then held on the issue of probable cause. The court found the officer lacked probable cause to detain or arrest Mr. Duffy prior to the pursuit and dismissed the attempt to elude charge on that basis.

## DISMISSAL OF THE CHARGE OF ATTEMPTING TO ELUDE

The State contends the order dismissing the eluding charge is based on the erroneous assumptions the officer's signal to stop must be legally correct and Mr. Duffy's response to an alleged improper seizure can be suppressed as fruit of an unlawful seizure. The State asserts the issue of whether or not the officer had probable cause to stop Mr. Duffy is irrelevant because RCW 46.61.024 does not mandate that the attempted stop be legal. Moreover, public policy does not permit an illegal response to an alleged illegal seizure.

The statutory provision defining the crime of attempting to elude reads in part as follows:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

RCW 46.61.024.

To convict a defendant of the crime of attempting to elude, three elements must be shown to have occurred in the proper sequence. *State v. Stayton*, 39 Wn. App. 46, 49, 691 P.2d 596 (1984), *review denied*, 103 Wn.2d 1026 (1985). The sequence of events must be as follows:

> The first element is that a uniformed police officer whose vehicle is appropriately marked must give the potentially errant driver of a motor vehicle "a visual or audible signal to bring the vehicle to a stop . . ." Next, the driver must be a person who "wilfully fails or refuses to immediately bring his vehicle to a stop . . ." The willful failure to do so implies knowledge that a signal has been given. The third element is that, "while attempting to elude a pursuing police vehicle," the driver "drives his vehicle in a manner indicating a wanton and [or] wilful disregard for the lives or property of others . . ." All three elements must occur in sequence before the crime has been committed.

*Stayton*, 39 Wn. App. at 49.

"[T]he issue under RCW 46.61.024 is the nature of the defendant's behavior after the police initiate a stop, not whether the officer has authority to make the stop." *State v. Malone*, 106 Wn.2d 607, 611, 724 P.2d 364 (1986). Police power may lawfully extend to prohibit flight from an unlawful detention where that flight demonstrates a wanton and willful disregard for the life and property of others. *Malone*, 106 Wn.2d at 611; *State v. Mather*, 28 Wn. App. 700, 703, 626 P.2d 44 (1981). "The constitutional right to be free from unreasonable searches and seizures does not create a constitutional right to react unreasonably to an illegal detention." *Mather*, 28 Wn. App. at 703.

In *Malone*, the court reversed the dismissal of attempting to elude charges finding that RCW 46.61.024 did apply when the pursuing police vehicle belonged to an Idaho officer who had no authority to make an arrest in Washington. In several decisions prior to the *Malone* decision, courts had upheld the constitutionality of this statute finding that RCW 46.61.024 punished unreasonable

conduct rather than constitutionally protected behavior. *State v. Brown*, 40 Wn. App. 91, 98, 697 P.2d 583, *review denied*, 103 Wn.2d 1041 (1985); *Mather*, 28 Wn. App. at 703. All of the courts addressing this issue were concerned with the safety of police officers and the public if individuals were permitted to flee from legal or illegal stops with wanton or reckless disregard.

The trial court erred when it dismissed the charge of attempting to elude based on its finding there was no probable cause for the initial stop. The court should have focused its attention on the conduct of Mr. Duffy in response to the stop and whether there was probable cause to support an arrest pursuant to RCW 46.61.024. The lower court erred in requiring the State to show probable cause for the initial stop.

## DISMISSAL OF DWI CHARGE

The State argues the trial court erred when it concluded the speedy trial period commenced on April 9, 1995, when the DWI citation was issued. The State maintains the municipal court "closed" its file 10 days after opening it when the city attorney indicated he was declining to prosecute in favor of the county charges. The State urges that the city attorney's decision not to prosecute should be treated as the "equivalent" of a dismissal and should have had the effect of tolling the speedy trial period. The State also argues that Mr. Duffy never challenged the decision to close the municipal court file and he should not have let the speedy trial period lapse without objecting if he thought the case was still open.

The application of a court rule to particular facts is a question of law reviewable de novo. *State v. Carlyle*, 84 Wn. App. 33, 925 P.2d 635 (1996). CrRLJ 3.3 reads as follows:

(a) **Responsibility of Court.** It shall be the responsibility of the court to ensure a trial in accordance with this rule to each person charged with having committed a crime.

. . . .

(c) **Time for Arraignment and Trial.**

(1) *Cases Filed in Court.* If the defendant is detained in jail, or subject to conditions of release, the defendant shall be arraigned not later than 15 days after the date the complaint is filed in court. If the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 15 days after that appearance in court which next follows the filing of the complaint or citation and notice. A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment. A defendant released from jail whether or not subjected to conditions of release pending trial shall be brought to trial not later than 90 days after the date of arraignment.

. . . .

(i) **Dismissal with Prejudice**. A criminal charge not brought to trial within the time period provided by this rule shall be dismissed with prejudice.

Charges of attempting to elude, DWI, and hit-and-run attended were filed in superior court on August 21, 1995. The State contends Mr. Duffy's speedy trial period commenced on April 9 citing *City of Seattle v. Bonifacio*, 127 Wn.2d 482, 488, 900 P.2d 1105 (1995), where the court held speedy trial rights attach with the issuance of a citation, regardless of whether the citation is subsequently filed. The defendant in the *Bonifacio* case was not booked into jail. Mr. Duffy argues that pursuant to CrRLJ 4.1(d) the speedy trial period was triggered on April 11, when his attorney filed a notice of appearance. This court need not address this issue as the speedy trial period would have expired regardless of which of these dates is designated as the triggering date.

The issue in this case is whether an order of dismissal without prejudice must be entered in municipal court before the speedy trial period is tolled, or whether this period is tolled by events which the State argues are the "equivalent" of a dismissal. It is clear that nothing

less than an order of dismissal without prejudice stops the speedy trial clock until such time as charges are refiled. CrRLJ 3.3(g)(4) provides that the "time between the dismissal of a charge and the defendant's arraignment or re-arraignment in court following the refiling of the same charge" will be excluded from the computation for a speedy trial. CrR 3.3(c)(2) is quite specific in its requirement that the entry of an order of dismissal is required before the speedy trial clock will be stopped. CrR 3.3(c)(2) provides in pertinent part as follows:

> (i) If after proceedings have been initiated in district court an information or indictment is filed with the superior court, and if at the time the information or indictment is filed . . . the defendant is not detained in jail or subjected to conditions of release, the defendant shall be arraigned not later than 14 days after the date of that appearance in superior court which next follows the filing of the information or indictment. . . . A defendant released from jail . . . shall be brought to trial not later than 90 days after the date of arraignment, less time elapsed in district court.

> (ii) "Time elapsed in district court" means the following: . . . . If at the time a complaint is filed with the district court the defendant is not detained in jail or subjected to conditions of release, time elapsed in district court commences on the date of the defendant's appearance in district court which next follows the filing of the complaint. Time elapsed in district court ends with the earlier of (a) *an oral or written order of dismissal entered by the district court*, or (b) the filing of an information or indictment in superior court.

(Emphasis added.)

The trial court did not err in dismissing the DWI charge based on its conclusion that the speedy trial period had expired. Both parties here concede that an order of dismissal was never entered in municipal court. The State's argument that the city's decision not to prosecute was the "equivalent" of a dismissal is without merit. Similarly, the State cannot argue that notations in the court file indicate that the court's closure of the file constituted the

equivalent of a dismissal. When the city decided not to prosecute the DWI charge, it had an obligation to have the matter dismissed from municipal court by an oral or written order entered in municipal court as required by the terms of CrRLJ 3.3(g)(4) and CrR 3.3(c)(2)(ii). Mr. Duffy should not be required to know what the city attorney was thinking when he sent the letter indicating that the city declined to prosecute the case. Similarly, Mr. Duffy should not be required to obtain and decipher notations in court records that may not have been authorized by a judge.

The State also argues Mr. Duffy had an affirmative duty to assert his speedy trial rights and challenge the order of dismissal that everyone concedes did not exist. The State relies on *State v. Rock*, 65 Wn. App. 654, 829 P.2d 232, *review denied*, 120 Wn.2d 1004 (1992) and *State v. Carson*, 128 Wn.2d 805, 912 P.2d 1016 (1996). These cases do not support the State's position. Rather, these cases indicate that in some circumstances a defendant may have a duty to assert speedy trial rights *after* the prosecution of the case is underway. In *Rock*, the court found that the defendant could not raise the speedy trial issue upon appeal after the trial and conviction. In *Carson*, defendant's counsel acknowledged that he waited until the period lapsed even though he had been involved in discussions with the judge, the court administrator, and opposing counsel concerning speedy trial problems.

█ Mr. Duffy had no duty to inform the court of a speedy trial problem when he had no knowledge as to whether or not the State would be prosecuting the charge against him. A defendant has no duty to assert speedy trial rights when the city has indicated that it will not prosecute, and the State, for whatever reason, has not taken any steps to initiate prosecution.

## HIT-AND-RUN ATTENDED DISMISSAL

The State contends the hit-and-run charge occurred in the course of the eluding incident. The eluding charge was

within the exclusive jurisdiction of the superior court and was timely. If the eluding charge was timely, the State argues, then the hit-and-run charge was also timely.

DWI and hit-and-run attended are gross misdemeanors which are violations of city ordinances and are within the jurisdiction of the municipal court. CrRLJ 4.3 deals with the joinder of offenses and states as follows:

> Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses:
>
> (1) Are of the same or similar character, even if not part of a single scheme or plan; or
>
> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

When multiple offenses arise out of the same criminal episode or transaction, there can only be one triggering date for calculating the time for trial of all offenses. *State v. Erickson*, 22 Wn. App. 38, 44, 587 P.2d 613 (1978). The speedy trial period should begin for all crimes " 'based on the same conduct or arising from the same criminal incident' from the time the defendant is held to answer any charge with respect to that conduct or episode." *State v. Peterson*, 90 Wn.2d 423, 431, 585 P.2d 66 (1978) (quoting ABA STANDARDS RELATING TO SPEEDY TRIAL, Std. 2.2 (Approved Draft, 1968)) This standard does not apply in situations where multiple charges are brought in different courts with exclusive jurisdiction by different prosecutorial authorities. *State v. Fladebo*, 113 Wn.2d 388, 392, 779 P.2d 707 (1989). These cases interpret superior court joinder rule CrR 4.3. The *Peterson* rule has recently been applied in juvenile court proceedings pursuant to JuCR 1.4(b). *State v. Harris*, 130 Wn.2d 35, 921 P.2d 1052 (1996).

The charges against Mr. Duffy all arise out of the events that occurred on the night of April 9, 1995. The State argues the conduct that resulted in the hit-and-run charge was related to the conduct that served as the basis of the

eluding charge rather than the conduct that served as the basis of the DWI charge. The State cites no authority to support this narrow interpretation. All of the facts necessary to charge Mr. Duffy with hit-and-run were available to the city attorney immediately and to the State as soon as the case was forwarded to them. This is not a situation where prosecutors needed time for drug analysis or to obtain additional information before a charge could be brought against the defendant on some part of his conduct arising out of one incident. The State does not argue that the municipal court lacked jurisdiction over this charge.

## HOLDING

The judgment of the superior court affirming dismissal of the DWI and hit-and-run attended charges is affirmed. The judgment dismissing the eluding charge is reversed.

SWEENEY, C.J., and THOMPSON, J., concur.